STATE v. WADE LOCKLEAR, PATRICK LOCKLEAR and
G. W. LOCKLEAR.

*Murder  Under  Act of* 1893, *Ch.* 85.

1. Upon a trial for murder there was evidence tending to prove
that the prisoner stood behind a tree and shot deceased.
There was also evidence that deceased had a gun beside him
when his body was found, and that the report of more than
one gun was heard about the time it was supposed the
deceased was shot. Upon this evidence the trial judge was
not warranted in instructing the jury that there was no evi-
dence from which they could bring in a verdict of murder
in the second degree.

2. Prior to Ch. 85, Laws 1893, the law was that, where the killing
was admitted or proved to have been done with a deadly
weapon, malice was presumed, and it was murder, nothing
else appearing. It devolved upon the prisoner under such
circumstances, to show facts in extenuation, mitigation or
excuse. This rule, under the Act of 1893, applies to murder
in the second degree, but not to murder in the first degree.

3. To constitute murder in the first degree, under the Act of 1893,
the killing must have been done "by lying in wait, or with
deliberation and premeditation." That the killing was so
done is not presumed by the law, but is a fact which must be
established by proof, the burden of proof being on the State.

CLARK and MONTGOMERY, JJ., dissent.

INDICTMENT FOR MURDER, and being accessory before the
fact, tried before *Hoke, J.,* at October Term, 1895, of
ROBESON Superior Court.

The bill of indictment charged Wade Locklear with the
murder of Burdie Bullard, and Patrick Locklear and G. W.
Locklear with being accessories before the fact.

*The Attorney General,* for the State.
*Messrs. E. K. Proctor, Jr., Shepherd & Busbee,* and
*French & Norment,* for the defendants.

FURCHES, J.:  The prisoner, Wade Locklear, is indicted for the murder of Burdie Bullard, and the prisoners, Patrick Locklear and G. W. Locklear, as accessories before the fact.  So the guilt of Wade must be established before Patrick and G. W. Locklear can be found guilty.  The fact that Burdie Bullard was killed by a gunshot wound through the head was not disputed.  But there was no direct testimony as to who did it, nor as to the circumstances under which it was done.  It was a case of circumstantial evidence.

There was a great deal of evidence introduced on the trial to show that the deceased was killed on Friday evening, and that, on Sunday week before, he had a fuss and a fight with the prisoners, and that they had threatened to kill him.  There was evidence that a man was seen going in the direction of where the deceased was found dead, with a gun in his hand, just before the report of a gun was heard, supposed to be the shot that killed the deceased; that the clothing this man was wearing resembled that of the prisoner, Wade Locklear, though the witnesses who testified to this, stated that they did not know who it was. Another witness testified that she saw some one going around her fence, in the direction where the deceased was killed, in a fast walk or trot, in a stooped condition, with a gun in his hand, though she did not know who it was. Dr. Norment testified that he acted as the coroner in holding an inquest over the dead body the day after he was killed ; that a short distance from where the deceased was killed he saw grass tramped behind a tree as if some one had stood upon it or kneeled upon it, though he saw no tracks and could not tell whether it had been done recently or not; that he saw a twig cut on the opposite side of the road in a line with this tree and where the deceased was killed.  It was also in evidence that the deceased had a

STATE *v.* LOCKLEAR.

gun with him, which was found lying by his side, and it was not shown whether this gun was loaded or not.   There was also evidence by some of the witnesses that they heard " guns " about the time it was supposed the deceased was killed.

This is a synopsis of the strongest part of the evidence against the prisoners, and it must be admitted that it tends strongly to prove that the prisoner, Wade, was the author of the killing, or, as the Attorney General put it, " It is consistent with the verdict of murder in the first degree." But this is not the question before us.   The question presented for our consideration is the correctness of his Honor's charge, which is stated as follows : " That after the jury had been out from Saturday evening until the following Wednesday, they returned into court and requested his Honor to restate to them the law with regard to the different degrees of murder.   This the court did by reading the statute to the jury, and charged them that if the killing was by lying-in-wait and shooting deceased from behind a tree, and the jury were satisfied of this beyond a reasonable doubt, and that the killing was willful, deliberate and premeditated, it would be murder in the first degree."   To this part of the charge there can be no objection.   It is in harmony with every opinion delivered by this Court upon the Act of 1893, dividing murder into two degrees.   But the charge did not stop with what we have quoted.   The judge added to that the following : " That there was no evidence of murder in the second degree in the case now on trial."   In this there was error.   It was the same in substance and effect as if he had told the jury, if they found the prisoners guilty of anything they must find them guilty of murder in the first degree.   To sustain this charge would be to nullify the statute of 1893.

This we cannot do, nor permit to be done by the judges of the superior courts.

Before the Act of '93 the law of homicide was the common-law as laid down by Sir Michael Foster, that where the killing was admitted or proved to have been done with a deadly weapon, malice was presumed and it was murder, nothing more appearing. And it devolved upon the prisoner to show circumstances in extenuation, mitigation or excuse. This rule, under the Act of '93, applies to murder in the second degree, and not to murder in the first degree. If it did, the Act of '93 would be a nullity. The first section of Ch. 85 of the Laws of 1893, except from the second section, which provides for murder in the second degree, and which retains the common-law presumption, a number of murders which are therein enumerated, among them, where it is perpetrated " by lying in wait_____or by any kind of willful, deliberate and premeditated killing_____ it shall be deemed to be murder in the first degree and shall be punished with death." And the third section provides : " But the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

Then, to constitute the prisoners murderers in the first degree, the killing must have been committed " by lying in wait, or with deliberation and premeditation." This is presumed by law, or it must be proved. If it is presumed, as we have said, then the Act of '93 is a nullity, and every killing that would have been murder before the act is murder in the first degree under the act. If it is to be proved, by whom is it to be proved ? Does the State have to make out its case, or does it devolve on the prisoner ? Is it required that the prisoner should prove a negative, or prove that he is not guilty, before the State proves that he is ? This cannot be so, and were it not for the great respect

STATE *v.* LOCKLEAR.

we have for those who differ with us, we would say, to our minds it seems absurd. Then, if these things are not presumed, but are to be found as facts, who is to find them, the judge or the jury? It would be new law in North Carolina for a judge to find the facts in a trial for murder. But the Act of 1893 says in express terms that the jury before whom the case is tried shall determine the degree of murder. And we do not understand this to mean an unbridled arbitrating or mob-finding, any more than it was before the statute. Even before the Act of '93 we all know that it was within the *power* of the jury to acquit and turn loose a prisoner, no matter how guilty he might be, and the court was powerless. In fact, it is alleged that they often did this. But it is expected that they will find the facts and apply them to the law given by the court, determine whether the prisoner is guilty or not, and, if guilty, in what degree. We see no reason why they should act differently now to what they did before the statute, and we do not believe they are any more disposed to take the law in their own hands in deciding cases under the Act of '93 than they were before.

It has been said that this Court has gone too far in its grant of power to the jury. But we do not think so. We have not gone as far as Judge IREDELL, of the Supreme Court of the United States, went in a charge of his in Georgia, quoted and approved by Justice GRAY in his opinion in the case of *Sparf* and *Hanson* v. *U. S.*, 156 U. S., 51, and appendix, p. 714.

This question has been fully discussed heretofore, and the Act of '93 construed by this Court, especially in the case of *State* v. *Fuller*, 114 N. C., 885, and *State* v. *Gadberry*, 117 N. C., 811, and we can see no reason to change or modify the construction given the statute in those cases.

There are a number of other exceptions made and

argued by the prisoner's counsel, but we have not considered them, as they may not arise on another trial and as we thought it best to put our judgment upon the point we have, with a view of emphasizing, if we could, the opinions of this Court heretofore given upon the construction of this statute.    There is error and a new trial is ordered.

New Trial.

CLARK, J. (dissenting) : In *State* v. *Covington*, at last Term, (117 N. C., 834,) it was held, affirming the construction of the statute theretofore made by McRAE, J., in *State* v. *Gilchrist*, 113 N. C., 673, and by AVERY, J., in *State* v. *Norwood*, 115 N. C., 791, that " the Act of February 11, 1893 " (which divided the crime of murder into two degrees) " does not give jurors a discretion, when rendering their verdict, to determine of what degree of murder a prisoner is guilty.    They must render a verdict according to the evidence ; and, believing a prisoner guilty beyond a reasonable doubt of murder in the first degree, it is their duty so to find, however much inclined to show mercy by rendering a verdict for a lesser offence.    Their obligation in that respect has not been changed by the statute, and is the same as it was upon the trial for homicide before its enactment, and the question was whether the prisoner was guilty of murder or manslaughter.    This question has been settled by our decisions, not only in construing the Act under consideration, but also the similar one dividing the crime of burglary into two degrees. *State* v. *Alston*, 113 N. C., 666; *State* v. *McKnight*, 111 N. C., 690 ; *State* v. *Fleming*, 107 N. C., 905." From this most recent deliverance of the Court (so clearly restating the law and citing with approval the former authorities) it is plain that the degree of murder for which the verdict can be rendered is not a matter of discretion with the jury, but must be in accordance with the evidence.    It

STATE v. LOCKLEAR.

necessarily follows, therefore,that if there is no evidence
of murder in the second degree it could not be error
to so instruct the jury. Here, there is no question of a
presumption to be drawn from the use of a deadly weapon,
nor does any question arise as to premeditation and delibera-
tion. These points are not presented in this case. The stat-
ute makes " the killing by lying in wait" murder in the first
degree. If the evidence was sufficient to show that the pris-
oner killed the deceased at all, it showed that he slew him
while lying in wait. If it was not sufficient to show that the
prisoner slew the deceased from ambush, it was not suffi-
cient to prove that he killed him at all. There was no
evidence whatever of murder in the second degree, nor of
any killing by the prisoner in any mode except by lying
in wait, which was murder in the first degree. The judge
therefore could not have erred in telling the jury that
" there was no evidence of murder in the second degree."
and " that if the killing was by lying in wait and shooting
the deceased from behind a tree, and the jury were satis-
fied of this beyond a reasonable doubt, and that the killing
was willful and premeditated, it would be murder in the
first degree." His Honor states that the charge is not
sent up in full, but, in accordance with repeated recom-
mendations of this Court, only so much is sent up as is per-
tinent to the exceptions. *Bank* v. *Bridgers*, 114 N. C.,
107; *Durham* v. *Railroad*, 108 N. C., 309. In charging
upon this state of facts that the jury should find the pris-
oner guilty of murder in the first degree, if satisfied beyond
a reasonable doubt that he slew the deceased by lying in
wait and shooting him from behind a tree, and if not so
satisfied to acquit him, *Judge Hoke* followed the law as
laid down in *State* v. *Covington*, at last Term, and adopted
the identical charge which was approved in that case and
in the several cases cited therein. A careful inspection of

the evidence will show, as the judge correctly stated, no evidence whatever of murder in the second degree, for it either proved that the murder had been committed by the prisoner's shooting the deceased by lying in wait, or it did not show that he had killed the deceased at all.   The evidence of murder in the first degree was sufficient to convince the jury, and the trial judge refused to set the verdict aside.   It need not be marshalled here, as its sufficiency is not before us.   The Attorney General's statement, in his argument, was that the evidence "was consistent with murder in the first degree and inconsistent with murder in the second degree."   The issue of fact was properly left to the jury and in every aspect presented by the evidence.

MONTGOMERY, J.:   I concur in the dissenting opinion.