## STATE v. ROBERT ROBERSON.

(Filed 7 April, 1909.)

1. **Murder—Deadly Weapon—Malice—Presumption—Premeditation—Burden of Proof.**

    While the law presumes malice from an admission of the killing of a human being with a deadly weapon, a pistol, the burden is on the State to fully satisfy the jury that it was. deliberately and premeditatedly done to justify a conviction of murder in the first degree.

2. **Murder—Deliberation and Premeditation—Evidence Sufficient.**

    Evidence of threats made by the prisoner, who was angry with deceased, that he would give deceased trouble unless he paid him certain wages due; that he went to deceased's place of business with a concealed weapon and shot three times with a pistol from the outside of the structure in which deceased was standing, killed him when unarmed, and ran away, is sufficient to sustain a verdict of murder in the first degree, upon the question of deliberation and premeditation. .

3. **Same—Intent.**

    The evidence tended to show that deceased had employed the prisoner and another and refused to pay them; that prisoner was angry with deceased and used threats, and had a concealed weapon, a pistol, on his person, and went to deceased's place of business and shot him down, firing three times while he was standing on the outside and deceased, unarmed, on the inside of the structure. The prisoner's own evidence made out a clear case of self-defense, but the State's evidence tended to show deliberation and premeditation to kill in the event the money claimed was not paid: *Held*, evidence that the prisoner went on this occasion, in consequence of being told by the other person with whom prisoner had worked that he had received his money, threw no light upon the intent of the prisoner to kill in the event he should not be paid, and was properly excluded.

4. **Murder—Deliberation and Premeditation—Time—Evidence.**

    In order to convict of murder in the first degree, there must be evidence that the fact of the killing was weighed and considered, resulting in the fixed purpose to kill; but the length of time between forming the purpose and the act is not material.

5. **Murder—Deliberation and Premeditation—Circumstantial Evidence.**

    Upon the question of murder in the first degree, premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining as to whether there were such the

jury may consider evidence of absence of provocation, absence of quarrel at the time of the killing, and threats, if there were such evidence.

6. **Murder—Deadly Weapon—Malice Presumed—Instructions—Premeditation and Deliberation.**

Malice is a necessary element of murder in the first and second degrees, means killing without legal excuse, and is presumed from the killing with a deadly weapon; and an instruction to the jury accordingly does not intimate a presumption of murder in the first degree, when the charge further states that the defendant must have weighed and determined the matter and formed a fixed purpose to kill, and must have killed as a consequence of this fixed purpose.

WALKER, J., dissenting; HOKE, J., concurring in the dissenting opinion.

INDICTMENT for the murder of Charles Whichard, tried at September Term, 1908, of the Superior Court of MARTIN, before W. R. Allen, J.

The prisoner was convicted of the capital felony, and from the judgment of the court appealed.

The facts are sufficiently stated in the opinion of the Court.

*Attorney-General* for the State.

*Wheeler Martin* and *Winston & Everett* for defendant.

BROWN, J.  1. The most important contention made by the prisoner upon this appeal is that there is no evidence of a premeditated and deliberate homicide.

The prisoner having admitted that he slew the deceased with a pistol, the law presumes malice, but nevertheless places the burden on the State to fully satisfy the jury that it was deliberately and premeditatedly done to justify a conviction of murder in the first degree.

The State examined several witnesses, whose testimony, set out fully in the record, tends strongly to prove that the prisoner and Will Roberson had been employed by deceased, and that there was a dispute about their wages, which had greatly incensed prisoner. On the day of the homicide prisoner armed himself with a pistol and threatened that unless the deceased paid him his money he was going to give him trouble about it;

that he had the pistol in his bosom while at the shop of one Moore, and there made threats against deceased that if he did not pay him he would give him trouble; that he took the pistol from his bosom and started from Moore's place towards the butcher shop of deceased, near by. The butcher shop has a lattice window, which was raised. Deceased was inside, leaning on the butcher's block. Prisoner fired at him three times from the outside of the market house and then ran. The evidence tends to prove that deceased was unarmed, that a small knife was on the block and a hatchet under the counter, but that deceased had hold of neither.

The only witness examined for the prisoner was the prisoner himself. His evidence makes out a clear case of self-defense. He testifies that he saw Will Roberson come from Whichard's shop, and that Will said, "I have got mine"; that he went to the shop to get his money, and asked deceased for it; that deceased cursed him and refused to pay him; that the deceased grabbed the hatchet and endeavored to kill prisoner, and that then prisoner fired on him.

We think that the evidence was amply sufficient to justify his Honor in submitting the question of premeditation and deliberation to the jury. The prisoner was angry with deceased about the wages he claimed; he had armed himself with a pistol the morning of the homicide and concealed it in his bosom; he made threats against the deceased that unless he was paid he would give deceased trouble. Such threats, coupled with the character of the weapon with which the prisoner had armed himself, justify the inference that he meant to kill or do serious bodily harm. He carried the pistol concealed, but took it out at the market house and fired at the unarmed man from the outside of the structure, as deceased was leaning on the block, and repeated his fire until he had shot three times, and then ran. From these facts, supported by abundant evidence, the inference that the shooting was deliberately and purposely done, with intent to kill, if the prisoner did not get his money, is well warranted. *State v. Hunt,* 134 N. C., 684; *State v. Teachey,* 138 N. C., 587; *State v. Exum,* 138 N. C., 599; *State v. Daniel,* 139 N. C., 549; *State v. Conly,* 130 N. C., 683, are cases somewhat in point.

The prisoner was evidently "taking the law in his own hands" and avenging his own wrongs. In this connection we may well quote from an eminent English writer: "Let it be observed that in all possible cases deliberate homicide upon a principle of revenge is murder. No man, under the protection of the law, is to be the avenger of his own wrongs. If they are of such a nature for which the laws of society will give him an adequate remedy, thither he ought to resort; but be they of what nature soever, he ought to bear his lot with patience." Foster's Crown Law, 296.

2. J. D. Moore, a witness for the State, testified: "I was sitting in front of my shop, when I heard the report of a pistol and saw the prisoner shoot Whichard three times and then run. Just before the shooting the prisoner was sitting down at my stove and talking to me. He said that Whichard (the deceased) owed him some money and he was going to have it or give Whichard some trouble about it. After a while he got up and went immediately to the market. He took his pistol out of his shirt front and commenced firing. I saw Will Roberson come across the railroad from Whichard's market just before the defendant went there." On cross-examination of this witness the prisoner proposed to show that Will Roberson, who had been at work with the prisoner for Whichard, came from Whichard and held up some money and said to prisoner, "I got mine." Defendant's counsel stated that the purpose was to show that witness induced defendant to think that Whichard had changed his mind and was paying off, and that this showed why defendant went to the market. This evidence, on objection by the State, was excluded, and defendant excepted.

We are of opinion that the rejected evidence tended to throw no light upon the real question at issue, and could not possibly have been of any value to the prisoner had it been admitted, and could not have affected the result.

The reason assigned for its competency is that this declaration of Will Roberson conveyed to the prisoner the information that Will Roberson had received his money and induced the prisoner to go at once to Whichard in order to get his pay, in the belief that he would get it, and thus to disprove any premeditation.

The rejected declaration is a circumstance tending to prove only one fact, viz., that the prisoner went to Whichard's market to demand the money he claimed that Whichard owed him, but it failed to throw any light whatever upon the prisoner's purpose in case Whichard still refused to pay him. It was offered solely upon the question of premeditation, and upon no other phase of the case, and if it fails to disprove that, then it is worthless for any purpose.

An examination of the evidence and contentions of the State and of the prisoner discloses the worthlessness of the rejected declaration.

The evidence of the State is very strong, and tends to prove that prisoner armed himself and went to the deceased, intending to kill him or do him bodily harm *only in the event that he did not get his money;* that he did not get his money, and that without any sort of provocation he shot the deceased, who was un- armed, three times, and killed him.

The defense of the prisoner is self-defense, and rests entirely upon his own evidence. It is evident that the jury utterly rejected the prisoner's evidence, or else they must have acquitted him. Had they credited his evidence, they could not have done otherwise, under the instructions of his Honor.

It is thus perfectly plain that the rejection of the declaration of Will Roberson, "I got mine," did not in the least affect or detract from the prisoner's defense. Did the rejection of it militate in any degree against prisoner upon the question of premeditation? The State did not contend that the prisoner went to the market armed and with one purpose to kill the deceased *in any event,* but only in the event that deceased refused to pay him. The deceased did refuse, and the prisoner carried out his previously formed purpose and killed him. The rejected declaration tends to prove why prisoner went to the market at the time he did, viz., to get his money, a fact admitted by the State, and had he received his money there would have been no homicide. But the contention and evidence of the State is that the prisoner went to the market to get his money, and that he intended to kill the deceased only in the event he failed to do so.

The rejected declaration throws no light whatever on prisoner's intentions in case of such failure. On the contrary, the decided probability is that the knowledge that the deceased had paid Will Roberson and refused to pay him "added fuel to the flame" and but hardened the prisoner's previously formed purpose to kill the deceased if he did not pay him.

3. The prisoner submitted some prayers for instruction upon the question of premeditation, and excepted because the court declined to give them, and further specifically excepted to the charge of the court, as follows: "By premeditation and deliberation is meant that the reason and judgment is exercised, that the fact of the killing is weighed and considered, and that as a result there is in the mind the fixed purpose to kill. The fixed purpose to kill must precede the act of killing, although the length of time between the time it is formed and carried into effect is not material. This premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining there was such the jury may consider evidence of absence of provocation, absence of a quarrel at the time of the killing, and threats, if there is such evidence. Not that you are compelled to find premeditation and deliberation from such evidence, but that if there is such evidence you may consider it in determining whether there was such premeditation and deliberation as I have indicated."

Almost every word in this charge has been repeatedly upheld by this Court. It follows all the decisions from *Fuller's case,* 114 N. C., 885, to *Bank's case,* 143 N. C., 652. The charge is substantially the charge which was approved by this Court in *State v. Teachey,* 138 N. C., 598. See, also, *State v. Exum, supra; State v. Booker,* 123 N. C., 713. The prisoner excepts to the following charge: "Malice, which is a necessary element of murder in the first and second degrees, means killing without legal excuse, and is presumed from killing with a deadly weapon."

This is a correct proposition of law. The killing with a deadly weapon raises a presumption of malice. That is all the charge says. There is no intimation that it raises a presumption of murder in the first degree. Such a charge would be obnoxious to *Locklear's case,* 118 N. C., 1154.

In another part of the charge the court gave the jury explicit

STATE v. ROBERSON.

instructions that the defendant must have weighed and deter-
mined the matter and formed a fixed purpose to kill, and must
have killed as a consequence of this fixed purpose.

The portion of the charge excepted to is evidently a part of
the judge's charge, that murder is the unlawful killing of an-
other with malice aforethought, and that killing with a deadly
weapon raises a presumption of malice. The jury could not,
in any view of the charge as to deliberation and premeditation,
have possibly thought that the judge intended to say that the
killing with a deadly weapon raised a presumption of murder
in the first degree, and as a matter of fact the judge did not
say it.

The able and painstaking judge who tried this case below
delivered a most exhaustive and clear charge to the jury, in
which he did the prisoner full justice.

We have examined the entire record, and each exception taken,
with the care demanded in a matter of such solemnity, and we
find no error of which the prisoner can justly complain.

No Error.

WALKER, J., dissenting: While I concur with the majority in
the rulings upon the other exceptions, I think the court below
erred in not admitting what was said and done by Will Rober-
son, in the presence and hearing of the defendant, before he
went to the market for the purpose of seeing Whichard about
his wages. That he went there to get his money was shown
by the testimony of the State's witness, J. D. Moore, for he told
Moore, not that he intended to give Whichard trouble because
he had refused to pay him, but that he intended to have his
money or give Whichard some trouble, implying that he would
first demand it of Whichard. The defendant and Will Rober-
son had worked together for Whichard, and the latter had before
refused to pay their wages. It seems that afterwards Whichard
changed his mind and paid Will Roberson what was due to him,
and the latter then, in the presence of the defendant and J. D.
Moore, held up his hand, with the money in it, and said, "I
have got mine." We must assume this to be true, as the court
excluded the testimony. This was not hearsay evidence. It
was itself a fact or circumstance, and its competency and rele-

vancy depend upon what impression it made on the mind of the defendant. It was surely competent for the defendant to show, if he could, that he went to see Whichard with a peaceful and not a hostile purpose. The State had introduced evidence tending to show that his purpose was a hostile one, and any fact or circumstance tending to show the contrary would seem to be relevant to the issue. It was not an unreasonable inference for the defendant to draw, from what Will Roberson said and did, that Whichard had changed his mind and intended to pay both of them what he owed. Why should he pay the one and not the other? They had both worked under the same circumstances and were equally entitled to their hire. No reason appears from the evidence why he should distinguish between them or discriminate against the defendant. The jury may have convicted the defendant of murder in the first degree, because they found from his previous threat, or the conversation with Moore, that he went to the market with the deliberate intent to kill Whichard, and not that he had formed his purpose to kill after he had reached there. In this view it was material for the defendant to show, if he could, that he approached Whichard with no homicidal intent, but, believing from what he had heard Will Roberson say, that he would receive his wages and would have no trouble with Whichard. The jury should have been permitted to hear the excluded evidence, so that they might determine, in the light of all the facts and circumstances, whether there had been premeditation and deliberation on the part of the defendant. I cannot say the evidence was so slight as to render harmless the ruling of the court by which it was rejected. The state of the defendant's mind was the question involved. If the evidence had been admitted, and upon it, when considered in connection with the other facts, the jury had found that the defendant went to see Whichard for the sole purpose of getting his money, thinking that Whichard would pay him, as he had paid Will Roberson, and that there would be no trouble, the question of premeditation and deliberation would naturally have been restricted to evidence of what occurred after the defendant had reached the market. It is true, the jury, with the evidence admitted, might have found that the defendant had fully made up his mind to kill Whichard if he refused to pay his wages, although he may

have thought that he would get his money without any trouble, but the question of premeditation and deliberation must be decided by the jury from all the facts as they may find them to be; and the slightest circumstance, forming substantially a part of the *res gestæ* and closely connected with the act of killing, may sometimes turn the scales in favor of the defendant.

If we are permitted to draw only that inference from the rejected testimony which is favorable to the State and unfavorable to the defendant, it may be the judge's ruling was correct. But is this the proper method of interpretation? Where the question is one of intent, the slightest circumstance, especially where it accompanies an act of the defendant immediately preceding the homicide, may be of sufficient weight to change the verdict. The jury in this case may have rejected the plea of self-defense and convicted the defendant, for the very reason that the testimony he offered was excluded by the court, as he was thereby left with nothing except his own testimony (viewed, of course, with some suspicion) and the State's testimony as to the threat alleged to have been made to J. D. Moore. If he had at one time conceived the purpose to kill Whichard in the event of his refusal to pay him, may not the jury have found upon the rejected testimony, if it had been admitted, that he had abandoned that purpose and approached Whichard fully believing that there would be no occasion for trouble, as there was no reason why he should not be paid, which did not apply with equal force to Will Roberson? The question was as to the state of his mind when he went to the market, where Whichard was, and not what he may have decided to do after Whichard refused to pay him, if there was such refusal. The defendant was entitled to have the jury consider every fact or circumstance tending to enlighten them upon this question. The exclusion of the evidence was tantamount to an absolute acceptance of the State's theory and the truth of the evidence supporting it, that he went to the market for the purpose of killing Whichard if he refused to pay his wages. It is true the rejected testimony tended to prove that the defendant went to collect his money, but this is not all it tended to prove, as I have shown.

HOKE, J., concurs in dissenting opinion.