The prisoner appeals from a verdict of murder in the first degree. The deceased, Carl Preddy, was overseer in the White Oak Cotton Mills near Greensboro. The prisoner had charge of the north end of the spinning room. It appears in testimony that the prisoner kept company with one of the girls working in his end of the spinning *Page 980 
room and that for some reason the deceased, as the overseer, transferred her to the other end of the room, against the protest of the prisoner, where the witness R. C. Moreland was in charge, who testifies that he saw the prisoner on Sunday morning before the homicide, who told him that he was "going to whip Preddy or he is going to whip me." Just then Preddy was passing in an automobile and stopped at the drug store, whereupon the prisoner and another got into the automobile. In about fifteen minutes Johnson came back and stated that he "saw the gentleman and told him he could mark it down he would get him." (922) This witness further stated that the deceased sent for him, and in consequence of a conversation he had with him, he saw the prisoner that evening and told him that Preddy had sent him his time, which was another way of saying that he was discharged. Thereupon the prisoner jerked out his pistol and said, "I will see him before 8 o'clock." The witness said to the prisoner, "Sit on the bed and let me talk to you a little bit"; that Preddy had told him to tell the prisoner he "did not have a thing against him; he would do anything he could for him and would help him get a job anywhere he could." The prisoner cursed and went out of the door. The next time the witness saw the prisoner was fifteen minutes past 12 the next day, during the noon rest. He was in the White Oak Mills with the deceased; no one else present but himself and Preddy, who was reading the morning paper. The witness was sitting on the table and Preddy on the stool right up against the wall at the end of the table. The witness looked up over the paper he was reading and saw Johnson within about 15 feet; he turned his head and said to Preddy, "Carl, there he comes," and when he turned back to look at Johnson he had his pistol out of pocket in his right hand, shooting as fast as he could. He grabbed him around the neck and slung him off. Preddy dropped his paper in front of the stool, stepped off the stool, and went walking off like he was in a big hurry. He walked about 20 steps and lay down. Johnson cursed the witness and said, "Turn me loose or I will shoot you." Thereupon he turned him loose and he started walking out with his pistol in his hand, and said, "I am going out and give myself up." The witness went down the alley where Preddy lay, and he looked as if almost dead. Johnson went out the same way he came in. He fired three shots — two of them before the witness grabbed him and one shot after that. This last shot went through the window above where Preddy was sitting. The prisoner spoke no word to Preddy and Preddy did not move. He had his foot on the stool and had the paper held up in front of him. The paper did not fall out of his hand till after he was shot. He was reading the paper when the first shot was fired. The prisoner was within 10 or 12 feet before the witness saw or heard him. He says that the prisoner knew that Preddy and he *Page 981 
stayed at that place every day during the noon hour. There were other witnesses who saw the prisoner enter the building and pass through the adjoining room with his right hand in his pocket and heard the pistol shots.
The witness Swink testified to the prisoner getting in the automobile with Preddy the day before, as testified to by Moreland, and that when he left, after some conversation with the deceased, he said to the deceased: "I will see you again." There was evidence that the prisoner borrowed the pistol from the witness Mitchell about noon on the day before, and that on that afternoon the prisoner showed the witness (923) Flintom a pistol like the one with which the killing was done and a pair of knucks; and that in conversation he said that Preddy had moved the girl to the other end of the room out of spite, and threatened that if Preddy should discharge him he would "fix him," showing him the knucks and pistol. At that time he had not been discharged. The witness advised the prisoner to talk the matter over with Miss Clowers and that she would not give him any bad advice. The same witness says that next morning he saw the prisoner, who then mentioned having lost his job, and said that he would ask the deceased for his job back, and if he did not give it to him he would "fix him," and the prisoner further said the witness might tell the deputy sheriff he "need not look for him, for he would come back and give himself up." The prisoner also asked the witness to write a letter to his brother and to tell him he had "lost his job and was in trouble and to get some money from his father and come up there that night." A few minutes after this the witness heard that Preddy had been killed. Another witness, Hilton, testified to a similar conversation about the same time, in which the prisoner made threats against the deceased, and that when the prisoner went out he went towards the mill, and in about five minutes he heard that Preddy was killed.
The two deputy sheriffs, Hobbs and Clark, testified that they arrested the prisoner half a mile from the mill; that he had the pistol in his hand, with three empty cylinders, and they also took from him some knucks and a bottle of whiskey.
Dr. J. W. Meadows testified that he saw Preddy at his office in the mills and found two bullet wounds, one in the right thigh and the other in the abdomen, and the latter caused his death.
The first exception is because the witness Flintom was allowed to testify that at the prisoner's dictation he wrote his brother that he "had lost his job and was in trouble; to see his father and get some money and come up there that night." This was competent in corroboration of the other evidence of intent, premeditation, and preparation. 6 Enc. Ev., 632; 21 Cyc., 923, 925, 930. Premeditation and deliberation may be *Page 982 
shown by circumstances. S. v. Roberson, 150 N.C. 840; 1 Wigmore Ev., secs. 103, 300. This testimony was proper for the consideration of the jury on the question of deliberation and premeditation in connection with the statements and threats by the prisoner on the afternoon and evening of the day before, and on this same Monday morning, as strongly tending to show continuity of design and purpose to kill the deceased.
The second exception is because the judge refused to charge the jury, as requested, that if they should "find from the evidence that the (924) prisoner, after the shooting and his arrest, when he was told by the officer Clark that Preddy was dead, the prisoner said, `He is not dead; you are trying to scare me,' that such expression on his part should raise a reasonable doubt in the minds of the jury as to whether the prisoner at the time he fired the shot which killed Preddy had the malicious, premeditated intent to kill; and they should not find him guilty of murder in the first degree." This would have been an expression upon the facts, and is prohibited by Revisal, 535; S. v. Davis,136 N.C. 568; S. v. Dancy, 78 N.C. 437.
Exception 3 is for the refusal of the court to charge the jury that upon certain stated aspects of the case the jury could not find the prisoner guilty of murder in the first degree; and Exception 8 was because the court refused to charge, "Unless all the evidence in this case the jury should not return a verdict of murder in the first degree." The use of a deadly weapon when the slaying is proven or admitted, as in this case, raises the presumption of malice and of murder in the second degree. But when there is evidence, as in the case, tending to show preparation, it is for the jury to determine where the act was committed with deliberation and premeditation; and if the accused previously procured a weapon for the purpose of using it, and does use it, the offense is ordinarily murder. S.v. Miller, 112 N.C. 885; S. v. Hensley, 94 N.C. 1021; S. v. Gooch, ib., 1014.
The deceased was not armed, but there is evidence that there was taken from his pocket, undrawn, after his death, a blackjack. The court charged fully as to murder in the second degree and self-defense, based upon the defendant's own testimony that he fired because he feared the deceased would use the blackjack, and had reached his hand toward his pocket, evidence which was contradicted by Morehead. The court also charged that if the prisoner, without any previous intention to use his weapon, burst into a sudden excess of rage on seeing the deceased, and slew him without premeditation, he would not be guilty of murder in the first degree. The jury did not take the prisoner's version of the homicide.
In the Miller case, supra, the Court held that when the prisoner went into the fight with no weapon but his pocket-knife, this alone was not *Page 983 
evidence of the premeditated purpose to kill; but it has been held that premeditation and deliberation may be inferred from preparation and threats. S. v. Booker, 123 N.C. 713; S. v. Hunt, 134 N.C. 684.
Exceptions 4, 5, 6, and 7 were from the refusal of the court to give certain prayers for instruction which omitted consideration of the circumstances showing that the prisoner had prepared himself with a deadly weapon and had made threats tending to show that the expected a difficulty, and went to see Preddy ready for it. In Ruffin v. R. R.,142 N.C. 120, the Court said: "This form of instruction, unless (925) all the material elements of the case be included, is objectionable because it excludes from the jury the duty of drawing such reasonable inference as the testimony would justify."
Exceptions 9 and 10 are to those parts of the charge which stated the contentions of the parties. If there had been any mistake or error in this respect it was the duty of counsel to have called attention to the matter then and there. S. v. Cameron, 166 N.C. 384; S. v. Blackwell, 162 N.C. 672;Jeffress v. R. R., 158 N.C. 215; S. v. Cox, 153 N.C. 638.
We have carefully considered the argument of the learned counsel for the prisoner, but we find no error of which the prisoner can complain. The evidence, if believed, showed malice, premeditation, deliberation, the procuring of a weapon, and threats to kill for a grievance, either fancied or real; it does not matter which. The jury believed the evidence, and in the conduct of the trial by the court we find
No error.
Cited: S. v. Little, 174 N.C. 801 (6cc); Muse v. Motor Co., 175 N.C. 471
(6c); Mfg. Co. v. Building Co., 177 N.C. 106 (6c); Bradley v. Mfg. Co.,177 N.C. 155 (6c); S. v. Love, 187 N.C. 39 (6c); S. v. Galloway,188 N.C. 417 (6c); Proctor v. Fertlizer Co., 189 N.C. 247 (6c); S. v.Steele, 190 N.C. 926 (6c); S. v. Burney, 215 N.C. 613 (4c).