## STATE v. CALDWELL.

(Filed December 20, 1901.)

1. JURY—*Peremptory Challenges—Homicide—The Code, Sec. 1199.*

  Where, upon a trial of an indictment for murder, the solicitor states that he will ask only for a verdict of murder in the second degree or manslaughter, the prisoner is not entitled to more than four peremptory challenges.

2. NOLLE PROSEQUI—*Indictment—Counts—Trial.*

  Where a person is indicted for murder, the solicitor may take a *nolle proseui* as to murder in the first degree, and the prisoner may be tried on the indictment for murder in the second degree or manslaughter.

INDICTMENT against Hezekiah Caldwell, heard by Judge *Frederick Moore* and a jury, at July (Special) Term, 1901, of the Superior Court of MADISON County. From a verdict of guilty of murder in the second degree and judgment thereon, the prisoner appealed.

*Brown Shepherd,* for *Robert D. Gilmer, Attorney-General,* for the State.

*W. W. Zachary,* for the defendant.

FURCHES, C. J. Indictment for murder. At the trial, and before the jury were called or empaneled, the Solicitor, with the permission of the Court, caused the following entry to be made upon the docket: "State v. Caldwell. In this case the State files notice (the prisoner being present in open court) that a verdict of guilty of murder in the first degree will not be asked for by the State, but only murder in the second degree or manslaughter. Gudger, Solicitor." Whereupon, the prisoner, by his attorney, Mr. Zachary, moved for his discharge, upon the ground that the order of the Solicitor was equivalent to a *nol pros.* of the charge of murder in the first degree, and that being so, he was entitled to his discharge. The motion was refused and the prisoner excepted, and the trial was proceeded with.

This exception has been virtually disposed of in the case of *State v. Hunt,* at last term, 128 N. C., 584. In that case the Solicitor, in a more informal manner than the Solicitor did in this case before the commencement of the trial, said he would not ask for a verdict of murder in the first degree, and the trial was then proceeded with; and in selecting the jury the prisoner demanded the right to challenge twenty-three jurors. This demand was denied, the Court stating that the Solicitor having stated that he would not ask for a verdict for murder in the first degree, and that the Court would treat it as a *nol pros.* as to that offense, and would so charge the jury. And so treating it, the prisoner was not on *trial for his life.* The prisoner in that case was convicted of manslaughter and appealed upon the ground that he was not allowed twenty-three peremptory challenges. This Court sustained the ruling of the Judge in that case upon the ground that, although the charges of murder in the first degree and in the second degree and manslaughter were all in the same bill of indictment and in one count, this was specially provided for in the

Act of 1893, Chap. 85; that the offenses were distinct, and it was as if they had been charged in separate counts.

The case of *State v. Hunt* is the same in principle, and this case must be controlled by it. There was no error in refusing the motion.

During the progress of the trial there were several exceptions taken by the prisoner to the ruling of the Court upon questions of evidence. We have examined them all and find them to be without merit, and not of sufficient importance to demand a discussion.

The prisoner asked several prayers for instruction, and some of them were not given and he excepted. To understand these prayers, it is necessary to state briefly some of the facts as shown by the evidence:

The prisoner and the deceased were young men, and in the morning of the day of the homicide (Sunday) they had a personal difficulty at a church, a few miles from where the killing took place. At the time of the killing the prisoner and his brother (now dead) were at the house of one Lewis. The deceased, Payne, and his brother passed the house of of Lewis and inquired for the prisoner and his brother. After passing the house of Lewis for a short distance, they turned back and passed the house of Lewis again, going in the direction from which they came, when they inquired for the prisoner and his brother. During this time the prisoner had taken Lewis' gun from the rack and loaded it, and shot the deceased through a crack in the house. And the prisoner contended that this was murder in the first degree, and as the Solicitor had entered a *nolle prosequi,* or what was equivalent thereto, the prisoner could not be convicted of murder in the second degree, and asked the Court to so charge the jury. The Court refused and the prisoner excepted.

We agree with the prisoner that this evidence, if believed, made a case of murder in the first degree. And we are at a

loss to know why the Solicitor declined to ask a conviction of murder in the first degree. We must suppose that he had reasons for so doing, which we have no knowledge of. But we do not agree with the prisoner that the evidence did not also prove murder in the second degree. The law of murder in the second degree, since the statute of 1893 is the same that was murder before that statute. *State v. Booker,* 123 N. C., 713. And before that statute, where the killing was admitted or shown to have been done with a deadly weapon, the law presumed malice, and, nothing else appearing, the killing was murder. This is the law as laid down by Sir Michael Foster in his Crown Pleas, and has been the law in this State ever since we have had a government.

It may be fortunate for the prisoner that we have found no error for which we should give him a new trial. For he is insisting that the evidence proves murder in the first degree. If we had given him a new trial and upon the case coming on for trial again, the Solicitor, with the consent of the Court, should withdraw his notice to the prisoner, that he would not ask for a conviction on the charge of murder in the first degree, as he would have had the right to do (*State v. Smith,* at this term), it seems to us the prisoner would have been in a bad condition—a new trial upon his own contention that the evidence so clearly showed murder in the first degree, that it was error for the Judge to charge the jury that it was also evidence of murder in the second degree.

But we have found no error that entitles the prisoner to a new trial, and the judgment is

Affirmed.