WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion.
The prisoner was convicted of the capital felony, and from the judgment of the court appealed.
The facts are sufficiently stated in the opinion of the Court.
1. The most important contention made by the prisoner upon this appeal is that there is no evidence of a premeditated and deliberate homicide.
The prisoner having admitted that he slew the deceased with a pistol, the law presumes malice, but nevertheless places the burden on the State to fully satisfy the jury that it was deliberately and premeditatedly done to justify a conviction of murder in the first degree.
The State examined several witnesses, whose testimony, set out fully in the record, tends strongly to prove that the prisoner and Will Roberson had been employed by deceased, and that there was a dispute about their wages, which had greatly incensed prisoner. On the day of the homicide prisoner armed himself with a pistol and threatened that unless the deceased paid him his money he was going to give him trouble about it; that he had the pistol in his bosom while at the (839) shop of one Moore, and there made threats against deceased that if he did not pay him he would give him trouble; that he took the pistol from his bosom and started from Moore's place towards the butcher shop of deceased, near by. The butcher shop has a lattice window, which was raised. Deceased was inside, leaning on the butcher's block. Prisoner fired at him three times from the outside of the market house and then ran. The evidence tends to prove that deceased was unarmed, that a small knife was on the block and a hatchet under the counter, but that deceased had hold of neither.
The only witness examined for the prisoner was the prisoner himself. His evidence makes out a clear case of self-defense. He testifies that he saw Will Roberson come from Whichard's shop, and that Will said, "I have got mine"; that he went to the shop to get his money, and asked deceased for it; that deceased cursed him and refused to pay him; that the deceased grabbed the hatchet and endeavored to kill prisoner, and that then prisoner fired on him.
We think that the evidence was amply sufficient to justify his Honor in submitting the question of premeditation and deliberation to the jury. The prisoner was angry with deceased about the wages he claimed; he had armed himself with a pistol the morning of the homicide and concealed it in his bosom; he made threats against the deceased that unless he was paid he would give deceased trouble. Such threats, coupled with the character of the weapon with which the prisoner had armed himself, justify the inference that he meant to kill or do serious bodily harm. He carried the pistol concealed, but took it out at the market house and fired at the unarmed man from the outside of the structure, as deceased was leaning on the block, and repeated his fire until he had shot three times, and then ran. From these facts, supported by abundant evidence, the inference that the shooting was *Page 689 
deliberately and purposely done, with intent to kill, if the prisoner did not get his money, is well warranted. S. v. Hunt, 134 N.C. 684; S. v.Teachey, 138 N.C. 587; S. v. Exum, 138 N.C. 599; S. v. Daniel,139 N.C. 549; S. v. Conly, 130 N.C. 683, are cases somewhat in point.
The prisoner was evidently "taking the law in his own hands" and avenging his own wrongs. In this connection we may well (840) quote from an eminent English writer: "Let it be observed that in all possible cases deliberate homicide upon a principle of revenge is murder. No man, under the protection of the law, is to be the avenger of his own wrongs. If they are of such a nature for which the laws of society will give him an adequate remedy, thither he ought to resort; but be they of what nature soever, he ought to bear his lot with patience." Foster's Crown Law, 296.
2. J. D. Moore, a witness for the State, testified: "I was sitting in front of my shop, when I heard the report of a pistol and saw the prisoner shoot Whichard three times and then run. Just before the shooting the prisoner was sitting down at my stove and talking to me. He said that Whichard (the deceased) owed him some money and he was going to have it or give Whichard some trouble about it. After a while he got up and went immediately to the market. He took his pistol out of his shirt front and commenced firing. I saw Will Roberson come across the railroad from Whichard's market just before the defendant went there." On cross-examination of this witness the prisoner proposed to show that Will Roberson, who had been at work with the prisoner for Whichard, came from Whichard and held up some money and said to prisoner, "I got mine." Defendant's counsel stated that the purpose was to show that witness induced defendant to think that Whichard had changed his mind and was paying off, and that this showed why defendant went to the market. This evidence, on objection by the State, was excluded, and defendant excepted.
We are of opinion that the rejected evidence tended to throw no light upon the real question at issue, and could not possibly have been of any value to the prisoner had it been admitted, and could not have affected the result.
The reason assigned for its competency is that this declaration of Will Roberson conveyed to the prisoner the information that Will Roberson had received his money and induced the prisoner to go at once to Whichard in order to get his pay, in the belief that he would get it, and thus to disprove any premeditation.
The rejected declaration is a circumstance tending to prove only (841) one fact, viz., that the prisoner went to Whichard's market to demand the money he claimed that Whichard owed him, but it failed to throw any light whatever upon the prisoner's purpose in *Page 690 
case Whichard still refused to pay him. It was offered solely upon the question of premeditation, and upon no other phase of the case, and if it fails to disprove that, then it is worthless for any purpose.
An examination of the evidence and contentions of the State and of the prisoner discloses the worthlessness of the rejected declaration.
The evidence of the State is very strong, and tends to prove that prisoner armed himself and went to the deceased, intending to kill him or do him bodily harm only in the event that he did not get his money; that he did not get his money, and that without any sort of provocation he shot the deceased, who was unarmed, three times, and killed him.
The defense of the prisoner is self-defense, and rests entirely upon his own evidence. It is evident that the jury utterly rejected the prisoner's evidence, or else they must have acquitted him. Had they credited his evidence, they could not have done otherwise, under the instructions of his Honor.
It is thus perfectly plain that the rejection of the declaration of Will Roberson, "I got mine," did not in the least affect or detract from the prisoner's defense. Did the rejection of it militate in any degree against prisoner upon the question of premeditation? The State did not contend that the prisoner went to the market armed and with one purpose to kill the deceased in any event, but only in the event that deceased refused to pay him. The deceased did refuse, and the prisoner carried out his previously formed purpose and killed him. The rejected declaration tends to prove why prisoner went to the market at the time he did, viz., to get his money, a fact admitted by the State, and had he received his money there would have been no homicide. But the contention and evidence of the State is that the prisoner went to the market to get his money, and that he intended to kill the deceased only in the event he failed to do so.
The rejected declaration throws no light whatever on (842) prisoner's intentions in case of such failure. On the contrary, the decided probability is that the knowledge that the deceased had paid Will Roberson and refused to pay him "added fuel to the flame" and but hardened the prisoner's previously formed purpose to kill the deceased if he did not pay him.
3. The prisoner submitted some prayers for instruction upon the question of premeditation, and excepted because the court declined to give them, and further specifically excepted to the charge of the court, as follows: "By premeditation and deliberation is meant that the reason and judgment is exercised, that the fact of the killing is weighed and considered, and that as a result there is in the mind the fixed purpose to kill. The fixed purpose to kill must precede the act of killing, although the length of time between the time it is formed and carried into effect *Page 691 
is not material. This premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining there was such the jury may consider evidence of absence of provocation, absence of a quarrel at the time of the killing, and threats, if there is such evidence. Not that you are compelled to find premeditation and deliberation from such evidence, but that if there is such evidence you may consider it in determining whether there was such premeditation and deliberation as I have indicated."
Almost every word in this charge has been repeatedly upheld by this Court. It follows all the decisions from S. v. Fuller, 114 N.C. 885, to S.v. Banks, 143 N.C. 652. The charge is substantially the charge which was approved by this Court in S. v. Teachey, 138 N.C. 598. See, also, S. v.Exum, supra; S. v. Booker, 123 N.C. 713. The prisoner excepts to the following charge: "Malice, which is a necessary element of murder in the first and second degrees, means killing without legal excuse, and is presumed from killing with a deadly weapon."
This is a correct proposition of law. The killing with a deadly weapon raises a presumption of malice. That is all the charge says. There is no intimation that it raises a presumption of murder in the first degree. Such a charge would be obnoxious to S. v. Locklear, 118 N.C. 1154.
In another part of the charge the court gave the jury explicit instructions that the defendant must have weighed and determined (843) mined the matter and formed a fixed purpose to kill, and must have killed as a consequence of this fixed purpose.
The portion of the charge excepted to is evidently a part of the judge's charge, that murder is the unlawful killing of another with malice aforethought, and that killing with a deadly weapon raises a presumption of malice. The jury could not, in any view of the charge as to deliberation and premeditation, have possibly thought that the judge intended to say that the killing with a deadly weapon raised a presumption of murder in the first degree, and as a matter of fact the judge did not say it.
The able and painstaking judge who tried this case below delivered a most exhaustive and clear charge to the jury, in which he did the prisoner full justice.
We have examined the entire record, and each exception taken, with the care demanded in a matter of such solemnity, and we find no error of which the prisoner can justly complain.
No error.