STATE OF NORTH CAROLINA v. JAMES JUNIOR JOHNSON, ALIAS BUDDY LOVE

No. 8

(Filed 10 March 1971)

1. Homicide § 21— first degree murder — motion to dismiss — question presented

On motion to dismiss a charge of murder in the first degree, the trial court must determine the preliminary question whether the evidence in its light most favorable to the State is sufficient to permit the jury to make a legitimate inference and finding that defendant, after premeditation and deliberation, formed a fixed purpose to kill and thereafter accomplished the purpose.

State v. Johnson

2. Homicide § 18— premeditation and deliberation — proof

Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation by deceased; (2) the conduct of defendant before and after the killing; and (3) the dealing of lethal blows after deceased has been felled and rendered helpless.

3. Homicide § 4— premeditation

Premeditation is thought beforehand for some length of time, however short.

4. Homicide § 4— deliberation

Deliberation means an intention to kill, executed in a cool state of blood, in furtherance of a fixed design or to accomplish some unlawful purpose.

5. Homicide § 21— first degree murder — sufficiency of evidence

Evidence tending to show that the victim's death resulted from four blows to the head rendered by defendant with a board, that defendant bound the victim's hands and feet while he was still alive, and that defendant attempted to hide the body, with the other circumstances, was sufficient to sustain a verdict of guilty of murder in the first degree.

6. Criminal Law §§ 74, 104— State's introduction of confession — portions favorable to defendant

Where the State introduces defendant's confession, defendant is entitled to claim the benefit of any part thereof which is favorable to him.

7. Homicide § 28— failure to instruct on self-defense

Evidence that a dispute arose about payment for fuel oil delivered by deceased to defendant, that the deceased took steps toward defendant, and that defendant immediately seized a board and used it with deadly effect, *held* insufficient to justify an instruction that the jury could return a verdict of not guilty on the ground of self-defense, there being no evidence that defendant used the weapon to repel a felonious assault or to save himself from great bodily harm, or that he struck believing he was in danger.

8. Homicide § 9— self-defense — voluntary entry into fight — notice of withdrawal

The right of self-defense is available only to a person who is without fault, and if one voluntarily, that is aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight and withdraws from it and gives notice to his adversary that he has done so.

9. Homicide § 14— intentional killing with deadly weapon — malice

A presumption of malice arises from a killing which results from the intentional use of a deadly weapon.

APPEAL by defendant from *McKinnon, J.,* August 10, 1970 Regular Criminal Session, CUMBERLAND Superior Court.

The defendant, James Junior Johnson, alias Buddy Love, was charged by bill of indictment, proper in form, with the capital felony of murder in the first degree in the killing of Bailey E. Wilson. The offense occurred on January 9, 1970.

On arraignment the defendant pleaded not guilty. The State introduced evidence in support of the charge, including a confession which, after challenged as involuntary, was found to have been voluntarily made. The jury returned a verdict finding the defendant guilty of murder in the first degree; and as a part of the verdict, recommended that punishment be imprisonment for life. From the mandatory life sentence, the defendant appealed.

*Robert Morgan, Attorney General, Burley B. Mitchell, Jr., Staff Attorney for the State.*

*Brown, Fix and Deaver by Bobby G. Deaver attorneys for defendant appellant.*

HIGGINS, Justice.

By Questions 1 and 2 discussed in his well prepared brief, defense counsel argues the evidence for the State, (1) was insufficient to be submitted to the jury on the charge of murder in the first degree; and (2) the court committed error in charging that murder in the first degree was a permissible verdict under the evidence in the case. These questions require a review of the State's evidence which included the defendant's confession. The two questions involved the same principle of law and may be considered together.

The evidence disclosed that Bailey E. Wilson, the deceased, was an oil deliveryman in the City of Fayetteville. On January 9, 1970, at about 6:45 p.m., he received a telephone call requesting a delivery of heating oil to the home of the defendant. Wilson left alone in his oil truck to make the delivery. About two hours thereafter, his truck ran into a ditch and stalled near a dead-end street on the outskirts of Fayetteville. On account of the peculiar noise of the engine and the frantic efforts of the driver to get out of the ditch, a neighbor became suspicious and

called the law enforcement officers. When the officers arrived on the scene, they found the dead body of Bailey E. Wilson in the cab of the truck with his hands and feet tied together by strands of copper wire.

The pathologist, who performed the post mortem, testified he found several abrasions and deep bruises about the hands and feet. "There were four lacerations of the scalp which were up to 3 or 4 inches in length. The edges were kind of ragged. They tended to curve in a front to back direction and they were the kind of damage that would be caused by a blunt instrument. The lacerations went through the scalp to the skull. There were four different areas of fracture of the skull. . . . I have an opinion satisfactory to myself that his death was due to the hemorrhage of the brain as a result of trauma inflicted to the outside of the head."

The officers found in the truck a ticket showing the delivery of oil to the defendant. The officers immediately went to the defendant's house where they were admitted and given permission to search. They found on the night stand in the bedroom a duplicate of the oil ticket signed by Wilson, showing the delivery. They found in a garbage can in the kitchen a piece of copper wire similar to the wire which bound Wilson's hands and feet. They found blood in the house and on the defendant's clothes. Outside the house near a trash can they found three oak boards, on one of which there were blood stains. These boards, though introduced in evidence, are not otherwise described in the record.

After being properly advised of his rights, the defendant made a confession. When it was reduced to writing, he signed it before a justice of the peace. The written confession, which was admitted in evidence, contained the following: "Sergeant H. B. Parham . . . a deputy sheriff . . . states that he is conducting an investigation of murder of Bailey E. Wilson of which I am a suspect and under arrest. I have been told, warned and advised that I have an absolute constitutional right to remain silent and not to answer any question . . . and that anything that I say may be later used as evidence against me. . . . I have been told . . . that I have a right to consult with counsel . . . and have been offered the right to telephone any lawyer or member of my family, before making a statement or answering any question. I now of my own free will voluntarily made the

following statement: 'I, Buddy Love, am twenty years old and live . . . at 2324 Clinton Road, Apartment Number 1. . . . (M)y wife . . . called Mr. Bailey E. Wilson and told him that we were out of fuel and Mr. Bailey Wilson said that he would deliver the oil to my house. . . . When Mr. Bailey Wilson arrived, he backed his truck up to the corner of my house and started to fill the oil drum. When he finished . . . and was making out the ticket for the oil, I said, "Mr. Bailey, I don't have the money to pay for the oil, but I will pay you . . . Monday." Mr. Bailey Wilson said, "You what? . . . You are going to give me the money." I said, "Bailey, I don't have the money." Bailey Wilson put his hand in his pocket and there was a piece of board lying on the ground beside the house. I picked up the board and said, "I don't have the money, but I will pay you Monday." Bailey Wilson stepped towards me and I hit him over the head with the board. Bailey Wilson fell backward and hit his head on the steps to my house, and rolled over and started groaning. . . . I picked up a cord (electrical cord) that was lying on top of the old heater that was setting behind my house and started to tie Bailey Wilson's legs. Bailey Wilson started to move. I tied his feet together and then tied his hands behind his back. I then drug Bailey Wilson backwards and put his head and body in the seat of the oil truck and then put his legs in last. I got into the truck and drove off to hide Bailey Wilson so that no one could find him. . . . I drove down this street and ran into a ditch and got stuck. I tried to get the oil truck out of the ditch, but could not. I heard some people coming and I jumped out of the truck and ran. . . . I took about two hundred dollars out of Bailey Wilson's shirt pocket.' "

When questioned whether he had been drinking whiskey or beer that night, the defendant answered, "No, sir, but I had taken some scag about eleven p.m. . . . Bailey Wilson arrived at my house about seven-thirty p.m. I had taken about two Darvons, about two tablets." Officers testified the defendant was normal at the time he made the incriminating admissions.

The defendant stated that he had taken the money from Wilson's pocket and had hidden it under the sink in the kitchen. The officers searched the place indicated and found $280.00 in twenties, tens and fives.

The indictment in this case is in the usual form charging murder in the first degree. The charge would permit the State

to show that the intentional kiling was after premeditation and deliberation or in the perpetration, or attempt to perpetrate, a robbery. However, in this case the court eliminated robbery and confined the jury to a finding of premeditation and deliberation as prerequisites to the return of a verdict of guilty of murder in the first degree.

[1-4] "On a motion to dismiss a count in the indictment charging murder in the first degree, the trial court must determine the preliminary question whether the evidence in its light most favorable to the State is sufficient to permit the jury to make a legitimate inference and finding that the defendant, after premeditation and deliberation, formed a fixed purpose to kill and thereafter accomplished the purpose." *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 541; *State v. Walters*, 275 N.C. 615, 170 S.E. 2d 484. "Premeditation and deliberation are not usually susceptible of direct proof, and are therefore susceptible of proof by circumstances from which the facts sought to be proved may be inferred. . . . 'Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: Want of provocation on the part of deceased. . . . The conduct of defendant before and after the killing. . . . The dealing of lethal blows after deceased has been felled and rendered helpless . . . . ' " *State v. Walters, supra.* "The courts define premeditation as 'thought beforehand for some length of time, however short. . . . Deliberation means . . . an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose. . . .' " *State v. Perry, supra.*

[5] The defendant argued that the evidence was insufficient to justify or permit a verdict of murder in the first degree. However, the defendant's account of the killing is contradicted by many of the circumstances disclosed by the evidence. The results of the *post mortem* refute defendant's statement that he struck only one blow. The pathologist testified the wounds caused by four blows were curved from front to back and were similar in shape and depth and that beneath each was a skull fracture. The blood in the house, the duplicate oil ticket on the night stand in the bedroom and copper wire in a trash can in the house tended to contradict the defendant's statement that one blow was delivered outside the house and the deceased's hands and feet were also bound outside the house. The number and ex-

tent of the fatal injuries, the binding of the victim's hands and feet while he was still alive, and the attempt to hide his body "so that no one could find him," with the other circumstances were sufficient to sustain a verdict of guilty of murder in the first degree.

The court charged that the jury, according to its finding of fact from the evidence, should return one of these verdicts: (1) Guilty of murder in the first degree; (2) Guilty of murder in the first degree with the recommendation that punishment be imprisonment for life in the State's prison; (3) Guilty of murder in the second degree; (4) Guilty of voluntary manslaughter; or (5) Not guilty.

[6, 7] The defendant neither testified nor offered evidence. However, the State, having introduced his confession, he is entitled to claim the benefit of any part thereof which is favorable to him. *State v. McLawhorn,* 270 N.C. 622, 155 S.E. 2d 198. A fair interpretation of his statement shows that he called for the delivery of oil after hours and during extremely cold weather; that he failed to notify the deceased that he was unable to pay for the oil until after it had already been transferred to his tank; and that a dispute arose about payment. According to the defendant's story, the deceased took steps toward him. The defendant immediately seized a weapon and used it with deadly effect. The defendant does not contend the deceased was armed or made any attempt to use any weapon. The defendant does not contend that he was put in fear for his own safety. The evidence fails to show that he used the weapon to repel a felonious assault or to save himself from great bodily harm, or that he struck believing he was in danger.

[8, 9] "The right of self defense is available only to a person who is without fault, and if a person voluntarily, that is, aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self defense unless he first abandons the fight and withdraws from it and gives notice to his adversary that he has done so." *State v. Davis,* 225 N.C. 117, 33 S.E. 2d 623; *State v. Church,* 229 N.C. 718, 51 S.E. 2d 345. The defendant complains that the judge should have charged the jury that under the evidence it might render a verdict of not guilty on the grounds the defendant fought in his self defense. The trial court, however, was careful to charge that the jury should consider the evidence that the de-

ceased was in the act of advancing towards the defendant and determine whether that fact was sufficient to rebut the presumption of malice arising from the intentional use of a deadly weapon, and thus reduce the offense to manslaughter. A presumption of malice arises from a killing which results from the intentional use of a deadly weapon. A finding of malice rules out manslaughter in this case. *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *State v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83; *State v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337; *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65. The record is devoid of evidence which would permit the jury to render a verdict of not guilty upon the ground the defendant struck the fatal blows in self defense. *State v. Davis, supra; State v. McLawhorn, supra; State v. Freeman,* 275 N.C. 662, 170 S.E. 2d 461. The court would have committed error had it charged the jury that a verdict of not guilty on the ground of self defense was permissible under the evidence. *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328; *State v. Duncan,* 264 N.C. 123, 141 S.E. 2d 23.

The defendant's counsel was diligent in the preparation of the record on appeal and careful to present a number of objections to the court's rulings, all of which we have examined and have found to be non-prejudicial.

No error.