215 S.E.2d 80 (1975)
287 N.C. 408
STATE of North Carolina
v.
Claude BUCHANAN.
No. 57.
Supreme Court of North Carolina.
June 6, 1975.
*83 Atty. Gen. Rufus L. Edmisten by Asst. Attys. Gen. William B. Ray and William W. Melvin, Raleigh, for the State.
W. R. Francis, Waynesville, for defendant-appellant.
COPELAND, Justice.
Defendant brings forward three assignments of error based on a total of three exceptions duly noted in the record.
Defendant first assigns error (Nos. 1 & 2) to the action of the trial court in denying his motion for "a directed verdict of not guilty" at the close of the State's evidence and in denying his motion for "nonsuit" at the close of all the evidence. The question presented by these assignments is whether the evidence was sufficient to warrant its submission to the jury *84 and to support a verdict of guilty of the offense charged in the first-degree murder indictment. See, e. g., State v. McCall, 286 N.C. 472, 212 S.E.2d 132 (1975); State v. Sparks, 285 N.C. 631, 207 S.E.2d 712 (1974); State v. Britt, 285 N.C. 256, 204 S.E.2d 817 (1974). Both of these motions have the same legal effect as a motion for judgment as in cause of nonsuit. See, e. g., State v. Cooper, 286 N.C. 549, 213 S.E.2d 305 (1975); State v. Britt, supra; State v. Glover, 270 N.C. 319, 154 S.E.2d 305 (1967).
When an indictment charges a defendant with first-degree murder, a motion for judgment as in case of nonsuit requires the trial court to determine whether the evidence, when taken in the light most favorable to the State, is sufficient to raise a legitimate inference, and to permit the jury to find that a defendant, after premeditation and deliberation, formed a fixed purpose to kill and thereafter accomplished this purpose. State v. Britt, supra, 285 N.C. at 262, 204 S.E.2d at 822. Accord, State v. McLaughlin, 286 N.C. 597, 213 S.E.2d 238 (1975); State v. Cooper, supra; State v. Sparks, supra; State v. Van Landingham, 283 N.C. 589, 197 S.E.2d 539 (1973); State v. Johnson, 278 N.C. 252, 179 S.E.2d 429 (1971); State v. Perry, 276 N.C. 339, 172 S.E.2d 541 (1970).
All the evidence in the instant case discloses that defendant intentionally shot the deceased with a .12 gauge shotgun and that his death was proximately caused by a shotgun wound to the chest and the chest cavity. Hence, the only remaining question is whether the evidence was sufficient to permit a jury to find that defendant acted after due premeditation and deliberation.
G.S. § 14-17, as presently written, provides in pertinent part as follows:
"A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing . . . shall be deemed to be murder in the first degree and shall be punished with death. All other kinds of murder shall be deemed murder in the second degree, and shall be punished by imprisonment for a term of not less than two years nor more than life imprisonment in the State's prison." (Emphasis supplied.)
In State v. Benton, 276 N.C. 641, 174 S.E.2d 793 (1970), an opinion by Justice Sharp (now Chief Justice), this Court documented the history of G.S. § 14-17 as follows:
"Prior to 1893 there were no degrees of murder in North Carolina. Any unlawful killing of a human being with malice aforethought, express or implied, was murder and punishable by death. State v. Streeton, 231 N.C. 301, 56 S.E.2d 649; State v. Dalton, 178 N.C. 779, 101 S.E. 548; State v. Rhyne, 124 N.C. 847, 33 S.E. 128; State v. Boon, 1 N.C. 191. `Malice aforethought was a term used in defining murder prior to the time of the adoption of the statute dividing murder into degrees. As then used it did not mean an actual, express or preconceived disposition; but imported an intent, at the moment, to do without lawful authority, and without the pressure of necessity, that which the law forbade. S. v. Crawford, 13 N.C. 425. As used in C.S., 4200, now G.S. 14-17, the term premeditation and deliberation is more comprehensive and embraces all that is meant by aforethought, and more.' State v. Hightower, 226 N.C. 62, 64, 36 S.E.2d 649, 650 (emphasis added); accord, State v. Smith, 221 N.C. 278, 20 S.E.2d 313; State v. Pike, 49 N.H. 399, 6 Am.Rep. 533." Id. at 657, 174 S.E.2d at 803-04.
The Act of 1893 was based on what has frequently been referred to as the "Pennsylvania pattern." See, e. g., R. Perkins, Criminal Law 89 (2d ed. 1969) (hereinafter Perkins); Keedy, History of the Pennsylvania Statute Creating Degrees of Murder, 97 U.Pa.L.Rev. 759 (1949). "The Pennsylvania statute [was] substantially the same as ours, and by that statute the first classification of criminal homicides into two degrees *85 of murder and manslaughter was made in this country." State v. Fuller, 114 N.C. 885, 899, 19 S.E. 797, 801 (1894). The Pennsylvania Act was first adopted in 1794 and at the time of the ratification of Chapter 85, 1893 Public Laws, every other State had previously divided the common law crime of murder into two degrees. State v. Fuller, supra, at 902, 19 S.E. at 802. See also Perkins, supra, at 88. See generally W. LaFave & A. Scott, Criminal Law 562-68 (West 1972) (hereinafter cited as LaFave & Scott).
The Act of 1893 was first construed by this Court in State v. Fuller, supra. However, the term "premeditation and deliberation" was not construed until State v. Thomas, 118 N.C. 1113, 24 S.E. 431 (1896), the fourth decision of this Court interpreting the 1893 Act. In that case, this Court made the following pertinent observations:
". . . In State v. Norwood, 115 N.C. [789], 790, 20 S.E. 712 . . . it was settled that if the prisoner once formed `the fixed design to take life' it was immaterial how soon after deliberately determining to do so the purpose was carried into execution. . . .
* * * * * *
". . . But this Court has never as yet ventured to give a more specific definition of the mental process which the Legislature intended to describe by the use of these words [premeditation and deliberation] than the general one given in Fuller's case. It is inaccurate to say that, whenever there is an intent to kill, the homicide belongs to the class of murders in the first degree; . . .
* * * * * *
". . . The word which marks distinctly the two degrees is `premeditated'. . . . `To say that murder was of the first degree, simply because it was intended at the moment . . . would be to construe the words "deliberate and premeditated" out of the statute.'. . . `An intent to kill may exist in other degrees of unjustifiable homicide, but in no other degree is that intent formed into a fixed purpose by deliberation and premeditation.' [Citation omitted.] This intent is defined by others as a steadfast resolve and deep-rooted purpose, or a design formed after carefully considering the consequences. [Citations omitted.]
* * * * * *
". . . In order to constitute deliberation and premeditation, something more must appear than the prior existence of actual malice or the presumption of malice which arises from the use of a deadly weapon. Though the mental process may require but a moment of thought, it must be shown, so as to satisfy the jury beyond a reasonable doubt, that the prisoner weighed and balanced the subject of killing in his mind long enough to consider the reason or motive which impelled him to the act, and to form a fixed design to kill in furtherance of such purpose or motive. [Citations omitted.]" (Emphasis supplied.) See also State v. Rhyne, 124 N.C. 847, 33 S.E. 128 (1899).
In analyzing the Act of 1893 (now G.S. § 14-17) it is clear that neither the statute nor the early court decisions interpreting it undertook to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent which is truly deliberate and premeditated. The time would naturally vary with different individuals and under differing circumstances. Therefore, as this Court has stated on countless occasions, "premeditation means `thought beforehand for some length of time, however short.'" See, e. g., State v. Britt, supra; State v. Fountain, 282 N.C. 58, 191 S.E.2d 674 (1972); State v. Johnson, 278 N.C. 252, 179 S.E.2d 429 (1971); State v. Sanders, 276 N.C. 598, 174 S.E.2d 487 (1970); State v. Perry, 276 N.C. 339, 172 S.E.2d 541 (1970); State v. Faust, 254 N.C. 101, 118 S.E.2d 769 (1961); State v. Lamm, 232 N.C. 402, 61 S.E.2d 188 (1950); State v. Wise, 225 N.C. 746, 36 S.E.2d 230 (1946); State v. Hammonds, *86 216 N.C. 67, 3 S.E.2d 439 (1939); State v. Lewis, 209 N.C. 191, 183 S.E. 357 (1936); State v. Steele, 190 N.C. 506, 130 S.E. 308 (1925); State v. Walker, 173 N.C. 780, 92 S.E. 327 (1917); State v. Roberson, 150 N.C. 837, 64 S.E. 182 (1909); State v. Daniel, 139 N.C. 549, 51 S.E. 858 (1905); State v. Hunt, 134 N.C. 684, 47 S.E. 49 (1904); State v. Cole, 132 N.C. 1069, 44 S.E. 391 (1903); State v. Caldwell, 129 N.C. 682, 40 S.E. 85 (1901); State v. Norwood, 115 N.C. 789, 20 S.E. 712 (1894). However, since the proscribed intent to kill must be turned over in the mind in order for the mental process of premeditation and deliberation to transpire, it is clear that some period of time must necessarily elapse. The true test is not the duration of time as much as it is the extent of the reflection. See, e. g., People v. Thomas, 25 Cal.2d 880, 156 P.2d 7 (1945). One commentator has suggested that for the premeditation the killer asks himself the question, "Shall I kill him?". The intent to kill aspect of the crime is found in the answer, "Yes, I shall." The deliberation part of the crime requires a thought like, "Wait, what about the consequences? Well, I'll do it anyway." LaFave & Scott, supra, at 563 fn. 5. We believe this analogy is in accord with the sound interpretation placed upon the Act of 1893 (now G.S. § 14-17) in State v. Thomas, supra.
Applying these rules to the case sub judice, we must determine if there was sufficient evidence of premeditation and deliberation to carry the first-degree murder charge to the jury. "In passing upon the sufficiency of the State's evidence to carry the case to the jury, the trial court in the present case was not required to consider defendant's testimony concerning self-defense." State v. Everette, 284 N.C. 81, 85, 199 S.E.2d 462, 466 (1973). Therefore, viewing the State's evidence in the light most favorable to the State, as we are bound to do, we hold it was sufficient to permit the jury to find that defendant acted after sufficient premeditation and deliberation. Specifically, the State introduced evidence that tended to show defendant knew the deceased had stolen wood on previous occasions; that on the day prior to the killing, defendant had secreted himself, with his shotgun, in a nearby field hoping to catch deceased stealing more wood; that on the day of the killing he saw deceased's truck pass by his home and back in the driveway of the Hooper place; that he thereafter got in his own truck and drove up to the Hooper place; that he parked his truck in front of the Hooper place in a manner so that the driveway was blocked; that he thereafter got out of his truck with a shotgun in his hands; that he told Robert Shook that he would blow his God damn brains out if he did not drop the wood he was carrying; that after Shook had thrown the wood down, he said: "God damn you, I'll kill you all"; that he then shot deceased, who was standing beside his Jeep truck; that he then reloaded his shotgun and told everyone to "move"; that he subsequently told Sheriff Holcombe that he did not see a weapon or anything else in the possession of deceased at or before the fatal shot; that he failed to tell Sheriff Holcombe deceased had advanced on him at any time during the incident; and that he told Sheriff Holcombe: "I didn't look for any weapon, if a man tells me he is going to kill me, I'm not going to give him a chance." We believe that the jury could properly determine from this evidence that the killing resulted from sufficient premeditation and deliberation to constitute first-degree murder. See, e. g., State v. Sparks, supra; State v. Britt, supra; State v. Van Landingham, supra. These first two assignments are therefore overruled.
In his final assignment (No. 3) defendant contends that the trial court erred in signing the judgment committing him to death by asphyxiation. Defendant makes no specific contention with respect to the validity of the death penalty. However, all possible contentions that defendant could present under this assignment have been considered and rejected by this Court in numerous recent decisions. See, e. g., State v. Armstrong, *87 287 N.C. 60, 212 S.E.2d 894 (1975); State v. Vick, 287 N.C. 37, 213 S.E.2d 335 (1975); State v. Woods, 286 N.C. 612, 213 S.E.2d 214 (1975); State v. Simmons, 286 N.C. 681, 213 S.E.2d 280 (1975); State v. Lampkins, 286 N.C. 497, 212 S.E.2d 106 (1975); State v. Williams, 286 N.C. 422, 212 S.E.2d 113 (1975); State v. Fowler, 285 N.C. 90, 203 S.E.2d 803 (1974); State v. Dillard, 285 N.C. 72, 203 S.E.2d 6 (1974); State v. Henderson, 285 N.C. 1, 203 S.E.2d 10 (1974); State v. Noell, 284 N.C. 670, 202 S.E.2d 750 (1974); State v. Jarrette, 284 N.C. 625, 202 S.E.2d 721 (1974); State v. Waddell, 282 N.C. 431, 194 S.E.2d 19 (1973). Furthermore, we note that the killing occurred on 15 April 1974, subsequent to the effective date of Chapter 1201, 1973 Session Laws. Hence, the punishment was that prescribed by the Legislature. See State v. Williams, supra.
If this was not a capital case, then defendant's conviction would stand since we can find no error in the assignments brought forward. However, since this is a capital case, and in accord with the well-settled practice of this Court, we have elected to consider ex mero motu certain portions of the trial court's charge. In particular, we are concerned with the following quoted portions:
"Now, among the circumstances which you may consider in determining whether a killing was with premeditation and deliberation are, as the Court previously instructed you: One, lack of provocation on the part of the deceased; Secondly, the conduct of the defendant, before and after the killing; Thirdly, the use of grossly excessive force; Four, any threats or declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased, and Five, the dealing of lethal blows after the deceased has been felled and rendered helpless.

"Now, the Court instructs you that premeditation and deliberation may be inferred from a vicious and brutal slaying of a human being. . . ."
After receiving the court's instructions the jury took a dinner recess, at the conclusion of which they retired to the jury room. Thereafter, at approximately 8:00 p. m., the entire jury panel returned to the courtroom, and with the defendant and his attorneys present in open court, the following proceedings took place:
"COURT: Mr. Foreman, the Court understands that the jury had a questionis that correct?
"JURY FOREMAN (GUY JONES): Yes, sir.
"COURT: What would that be, sir? If you would stand?
"JURY FOREMAN: Sir, the jury was in question on the five issues that were supposed to be proved without a reasonable doubt.
"COURT: The five elements of first degree murder?
"FOREMAN: Yes, sir.
"COURT: Do you want those reviewed, now?
"FOREMAN: Yes, sir.
"COURT: And just that, is that correct?
"FOREMAN: Yes, sir."
Following the above exchange, the court repeated in full its prior instructions pertaining to the elements the State must prove beyond a reasonable doubt in order to sustain a conviction of first-degree murder. Included in these subsequent instructions was the portion of the charge previously set out in full.
Of course, ordinarily, it is not possible to prove premeditation and deliberation by direct evidence. Therefore these elements of first-degree murder must be established by proof of circumstances from which they may be inferred. See, e. g., State v. DeGregory, 285 N.C. 122, 203 S.E.2d 794 (1974); State v. Britt, supra; State v. Van Landingham, supra; State v. Fountain, supra; State v. Duboise, 279 N.C. 73, 181 S.E.2d *88 393 (1971); State v. Reams, 277 N.C. 391, 178 S.E.2d 65 (1970); State v. Walters, 275 N.C. 615, 170 S.E.2d 484 (1969). Among the circumstances to be considered by the jury in determining whether a killing was with premeditation and deliberation are: want of provocation on the part of the deceased; the conduct of defendant before and after the killing; the use of grossly excessive force; or the dealing of lethal blows after the deceased has been felled. See, e. g., State v. Walters, Id. at 623-24, 170 S.E.2d at 490; and the cases previously cited above.
However, we have held that "[a] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence. When such instructions are prejudicial to the accused he would be entitled to a new trial. [Citations omitted.]" State v. Lampkins, 283 N.C. 520, 523-24, 196 S.E.2d 697, 699 (1973). Accord, State v. McClain, 282 N.C. 396, 193 S.E.2d 113 (1972); State v. Jennings, 276 N.C. 157, 161, 171 S.E.2d 447, 449 (1970); State v. Knight, 248 N.C. 384, 103 S.E.2d 452 (1958); State v. McCoy, 236 N.C. 121, 71 S.E.2d 921 (1952); State v. Wilson, 104 N.C. 868, 10 S.E. 315 (1889). This rule is consistent with the following statement by this Court in State v. Gaskins, 252 N.C. 46, 48-49, 112 S.E.2d 745, 747 (1960):
"`. . . [E]vidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury.' State v. Vinson, 63 N.C. 335, 338. `. . . [S]uch facts and circumstances as raise only a conjecture or suspicion ought not to be allowed to distract the attention of juries from material matters . . .' Pettiford v. Mayo, 117 N.C. 27, 28, 23 S.E. 252, 253."
In State v. Cameron, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), this Court, in an opinion by Justice Branch, stated the rule as follows:
"G.S. § 1-180 requires the trial judge to clarify and explain the law arising on the evidence and a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial. State v. Jennings, 276 N.C. 157, 171 S.E.2d 447; State v. Wilson, 104 N.C. 868, 10 S.E. 315. The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence. [Citations omitted.]" (Emphasis supplied.)
In the instant case the court instructed the jury that they could "infer" premeditation and deliberation from "the dealing of lethal blows after the deceased has been felled and rendered helpless" and from the "vicious and brutal slaying of a human being." This instruction was not given once, but twice, the last being some forty minutes prior to the time the jury rendered a verdict of guilty of first-degree murder. The record is totally devoid of any evidence or reasonable inference that defendant assaulted deceased or otherwise "dealt lethal blows" upon his person after he had been "felled and rendered helpless." In fact, all the evidence shows that defendant, subsequent to the firing of the fatal shot, moved his truck, which was blocking the drive, so that the deceased and his companions could leave. Furthermore, the facts of this case fail to disclose a "vicious and brutal" killing in the sense those terms are usually employed. Considering all the evidence, there is no doubt but that the issues of "premeditation and deliberation" constituted the primary focus of the jury's inquiry. Therefore, we hold that the trial court's charge that the jury could infer these elements from matters not supported by the evidence constituted prejudicial error entitling defendant to a new trial.
Accordingly, for the reasons above stated, this case is remanded to the Jackson County Superior Court for a
New trial.