STATE OF NORTH CAROLINA v. JAMES FREDERICK LEACH

No. 399A93

(Filed 5 May 1995)

1. **Homicide § 232 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of first-degree murder based upon premeditation and deliberation where it tended to show that defendant had a loaded gun when he and two other men went to the home of Weldon, the ex-girlfriend of one of his companions; defendant left the home, waited in his companion's car, and eventually followed the companion to the victim's car, which was also occupied by Weldon's current boyfriend; defendant pointed a gun at Weldon's current boyfriend and then at the victim, stating that he would "ice" the victim; defendant then fired a shot into the victim's head at close range; the victim in no way provoked the shooting; Weldon's current boyfriend saw defendant pull his gun from the car window; and defendant then exchanged gunfire with the current boyfriend.

**Am Jur 2d, Homicide §§ 425 et seq.**

2. **Homicide § 706 (NCI4th)— failure to instruct on voluntary manslaughter—error cured by first-degree murder verdict**

Assuming that the trial court's failure to instruct on voluntary manslaughter was error, such error was harmless where the court instructed on first-degree and second-degree murder, and the jury returned a verdict of guilty of first-degree murder.

**Am Jur 2d, Homicide §§ 527 et seq.**

**Modern status of law regarding cure of error, in instruction as to one offense, by conviction of a higher or lesser offense. 15 ALR4th 118.**

3. **Criminal Law § 818 (NCI4th)— interested witness instruction—necessity for request**

Defendant's request for an instruction on accomplice testimony could not be construed as including a request for an instruction on the testimony of interested witnesses, and the trial

court was not required to instruct on the credibility of interested witnesses absent a request by defendant.

**Am Jur 2d, Trial §§ 1406 et seq.**

**4. Homicide § 489 (NCI4th)— instructions—circumstances showing premeditation and deliberation—supporting evidence unnecessary**

The trial court did not err by instructing the jury that it "may" find premeditation and deliberation from certain circumstances, "such as" circumstances listed by the court, even in the absence of evidence to support each of the circumstances listed, since the instruction did not preclude the jury from finding premeditation and deliberation from direct evidence or other circumstances, and it did not indicate to the jury that the trial court was of the opinion that evidence existed which would support each or any of the circumstances listed. The decision of *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 is disapproved to the extent that it may be construed to be inconsistent with this holding.

**Am Jur 2d, Homicide § 501.**

**Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Gaines, J., at the 25 January 1993 Criminal Session of Superior Court, Mecklenburg County. Heard in the Supreme Court on 16 February 1995.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Harry C. Martin, J. Matthew Martin, and John A. Martin, for the defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was tried capitally and convicted by a jury of first-degree murder, discharging a firearm into occupied property and assault with a deadly weapon. After a capital sentencing proceeding, the jury recommended a life sentence for the murder, and the trial court entered sentence accordingly.

**STATE v. LEACH**

[340 N.C. 236 (1995)]

The State's evidence tended to show that on Sunday, 7 June 1992, Ronald Roseboro, David Rose and defendant James Frederick Leach met at the Luxbury Hotel near Interstate 85 in Charlotte. The three men left the hotel and drove to LeNita Weldon's apartment in Roseboro's car. Weldon was Roseboro's ex-girlfriend and the mother of his daughter. Weldon had called Roseboro earlier in the day to discuss putting their daughter in day care. Defendant carried a loaded pistol wrapped in a white towel into Weldon's home. While the three men were in Weldon's apartment, Weldon's current boyfriend, Leonard Livingston, and the victim, Ronald Lumpkin, arrived. Weldon, Livingston and Lumpkin went upstairs. Weldon and Livingston argued about Roseboro being in Weldon's home.

Roseboro, Rose and defendant left the apartment after hearing a pistol cock. A short time later, Lumpkin, Weldon and Livingston emerged from the apartment and went to Lumpkin's car. Livingston and Lumpkin got in the car. Roseboro approached Livingston and spoke to him for a moment before leaving. Roseboro returned to Lumpkin's car when Livingston opened the passenger door of the car. Defendant, following Roseboro, approached Lumpkin's car on the driver's side. Defendant told Livingston that he was there just to make sure everything was "cool." Livingston turned to see defendant point a gun at him and then pull the gun back toward Lumpkin. Defendant stated that he would "ice" Lumpkin right there. Livingston turned away from defendant to locate Roseboro. As he turned, he heard a gunshot. During this entire time, Lumpkin was seated in the driver's seat of his car, watching the parties converse, with his hands on the steering wheel. Lumpkin never spoke to defendant, and defendant never spoke directly to him.

After hearing the gunshot, Livingston turned back toward Lumpkin. Livingston saw defendant standing next to the car, pulling his gun out of the car window. Lumpkin had been shot in the head. Livingston jumped out of the car and exchanged fire with defendant as defendant ran away. Roseboro and Rose also fled the scene. No one else was hurt.

An autopsy revealed powder burns around the entrance of the victim's wound indicating that the gun had been fired within two or three feet of the victim. The police recovered a .45-caliber bullet from the trunk of a car parked next to the victim's vehicle. That bullet had been fired from the same gun as the bullet removed from the victim during the autopsy.

[1] Defendant argues in his first assignment of error that the trial court erred by denying his motion to dismiss the charge of first-degree murder due to insufficiency of the evidence. On a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382 (1988). We recently defined first-degree murder as follows:

> First-degree murder is the unlawful killing—with malice, premeditation and deliberation—of another human being. N.C.G.S. § 14-17 (1993); *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). Premeditation means that defendant formed the specific intent to kill the victim for some length of time, however short, before the actual killing. *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). Deliberation means that defendant carried out the intent to kill in a cool state of blood, "not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 842-43 (1984).

*State v. Arrington*, 336 N.C. 592, 594, 444 S.E.2d 418, 419 (1994).

The evidence in the present case tended to show that defendant arrived at Weldon's home with a loaded gun. He left the home and waited in Roseboro's car, eventually following Roseboro to the victim's car. Defendant pointed the gun at Livingston and then at the victim, stating that he would "ice" the victim. The evidence showed that the victim in no way provoked the shooting. The bullet that killed Lumpkin was fired from close range. Livingston saw defendant pulling his gun from the car window. Defendant exchanged gunfire with Livingston as he left the scene. This evidence, taken in the light most favorable to the State, was substantial evidence that defendant committed premeditated and deliberate murder. This assignment of error is without merit.

[2] In another assignment of error, defendant argues that the trial court erred by failing to instruct the jury on voluntary manslaughter. It is unnecessary to decide whether the evidence supported a voluntary manslaughter instruction. Assuming *arguendo* it was error not to instruct on voluntary manslaughter, a review of the possible verdicts submitted to the jury and the jury's ultimate verdict reveals that such error was harmless. The trial court instructed the jury that it could find defendant (1) guilty of first-degree murder, based either on the theory of premeditation and deliberation or the theory of felony mur-

der; (2) guilty of second-degree murder; or (3) not guilty. The jury returned a verdict finding defendant guilty of first-degree murder on both theories submitted. This Court, addressing the identical argument presented by defendant, has said:

> "A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of his guilt of the greater offense. The failure to instruct that they could convict of manslaughter therefore could not have harmed the defendant."

*State v. Shoemaker*, 334 N.C. 252, 271, 432 S.E.2d 314, 324 (1993) (quoting *State v. Freeman*, 275 N.C. 662, 668, 170 S.E.2d 461, 465 (1969)). Thus, even if it was error to fail to instruct the jury in this case regarding voluntary manslaughter, such error was harmless.

[3] In another assignment of error, defendant notes that he asked the trial court to give an instruction regarding the credibility of Livingston and Roseboro in light of evidence that they were his accomplices. On appeal, defendant properly concedes that on the evidence presented, Livingston and Roseboro did not fall within the definition of "accomplices" and that the trial court did not err by failing to instruct the jury regarding accomplice testimony. Nevertheless, defendant argues that his request should have alerted the trial court that Livingston and Roseboro were interested parties and that the trial court should have instructed the jury concerning testimony of interested parties. Defendant contends that such an instruction was warranted because Livingston and Roseboro had not been charged for any crime related to the shooting of Ronald Lumpkin. Therefore, he concludes, it was in their best interests to testify in a manner favorable to the State so they would not be charged.

The idea that defendant's request for an instruction regarding testimony by accomplices encompassed a request that the trial court also instruct the jury on the credibility of interested witnesses is not supported by the record. The transcript clearly shows that the colloquy between defense counsel and the trial court concerning defendant's request for an instruction on accomplice testimony could in no way be construed to include a request for an instruction on the testimony of interested witnesses. Thus, defendant essentially argues that the trial court should have, *sua sponte*, instructed the jury on the credibility of interested witnesses. The law is otherwise; "an instruction as to the credibility of an interested witness relates to a subordi-

nate feature of the case and the court is not required to charge thereon absent a request." *State v. Eakins*, 292 N.C. 445, 447, 233 S.E.2d 387, 388 (1977). As defendant did not request such an instruction in the present case, this assignment of error is without merit.

**[4]** In his final assignment of error, defendant contends that the trial court erred by instructing the jury that when deciding whether the killing was done with premeditation and deliberation, it could consider whether (1) the defendant used grossly excessive force, or (2) the circumstances of the murder were brutal or vicious. Defendant argues that neither of those circumstances was supported by the evidence and that the prejudice he suffered due to the trial court's instruction entitles him to a new trial. *See State v. Buchanan*, 287 N.C. 408, 420-22, 215 S.E.2d 80, 87-88 (1975).

The trial court instructed the jury on premeditation and deliberation as follows:

Neither premeditation or deliberation is usually susceptible of direct proof. They may be proved by proof of a circumstance from which they may be inferred such as a lack of provocation by the Victim; conduct of the Defendant before, during and after the killing; threats and declarations of the defendant; use of grossly excessive force or vicious circumstances of the killing or the manner or means by which the killing was done.

This instruction is based upon the North Carolina Pattern Instructions. N.C.P.I.—Crim. 206.10 (1989). This Court said in *State v. Weathers*, 339 N.C. 441, 451 S.E.2d 266 (1994), that " '[t]he elements listed [in this pattern jury instruction] are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation. It is not required that each of the listed elements be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation.' " *Id.* at 454, 451 S.E.2d at 273 (quoting *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990)).

The instruction in question informs a jury that the circumstances given are only illustrative; they are merely examples of some circumstances which, if shown to exist, permit premeditation and deliberation to be inferred. The instruction tells jurors that they "may" find premeditation and deliberation from certain circumstances, "such as" the circumstances listed. The instruction does not preclude a jury from finding premeditation and deliberation from direct evidence or

other circumstances; more importantly, it does not indicate to the jury that the trial court is of the opinion that evidence exists which would support each or any of the circumstances listed. Therefore, the trial court did not err by giving the instruction at issue here, even in the absence of evidence to support each of the circumstances listed. Accordingly, we reject this assignment of error. To the extent that *State v. Buchanan*, 287 N.C. 408, 420-22, 215 S.E.2d 80, 87-88, may be construed to be inconsistent with our holding on this issue, it is disapproved.

For the foregoing reasons, we hold that defendant received a fair trial free of prejudicial error.

NO ERROR.