**Johnny Brenard MILLER, Petitioner,**

v.

**R.C. FORESTER and the Attorney General of North Carolina, Respondents.**

No. C–C–81–198–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 1, 1983.

Johnny Brenard Miller, pro se.

Barry S. McNeill, Asst. Atty. Gen. of N.C., and Rufus L. Edmisten, Atty. Gen., of North Carolina, Raleigh, N.C., for respondents.

FINAL ORDER OF DISMISSAL

POTTER, District Judge.

Johnny Brenard Miller, Petitioner, seeks habeas corpus relief for his August 4, 1979 conviction in the Superior Court for Mecklenburg County for voluntary manslaughter. Upon this conviction, Petitioner was sentenced to prison for a term of 15 to 20 years. The sole issue raised by Petitioner is that he was denied due process of law when the state trial judge declined to instruct the jury on the possible defense of self-defense. Petitioner raised this claim on direct appeal to the North Carolina Court of Appeals which found no error. *See, State v. Miller,* 48 N.C.App. 226, 275 S.E.2d 572 (1980). The

**1384**

Supreme Court of North Carolina denied certiorari review. 301 N.C. 404, 273 S.E.2d 449 (1980). Consequently, the record reflects, and this Court finds, that Petitioner has properly exhausted his state court remedies in accordance with 28 U.S.C. § 2254 and is entitled to this Court's substantive review. However, for the reasons set out below, the Court finds no merit in the claim raised by Petitioner and herein grants the Attorney General's motion to dismiss the petition.

I.

The pertinent facts, as reflected in the record, are as follows: Petitioner and some friends, including Tyrone Davis, heard about a party on May 6, 1979 at the home of one Betty Bennett, and decided to attend. At the party, Petitioner and several others went into the bathroom, to smoke marijuana according to some of the testimony. (Tr. p. 167). The deceased, Willie Jackson, who resided at the residence, knocked on the bathroom door and told the occupants to take their dope outside because there were kids in the house. (Tr. p. 168). According to Tyrone Davis, who testified for the defense, Jackson returned at some point and the following exchange took place:

> Jackson—I asked you several times you have to take that damn shit out of here.
>
> Miller/Petitioner—Well it wasn't me you know, I wasn't smoking. You don't scare me.
>
> Jackson—You don't scare me. I'll kill any damn thing that moves. (Tr. p. 186).

At this point, Jackson went into the bedroom and a voice in the crowd yelled "He's gone to get a gun for real, man." Tyrone Davis testified that at this point he was afraid that Jackson had gone to get a gun. (Tr. p. 187). Suddenly, a handgun fell to the floor near Petitioner's feet. Tyrone's testimony continues as follows:

A. Johnny picked the gun up and I grabbed for him, hollered, "Come on man, let's go.", and at that time he sort of, sort of like that—

Q. When you said that to him, where was he looking?

A. Johnny was looking at the door, and when he picked the gun up he was watching the door at all times.

Q. All right. Now, what happened after you grabbed him?

A. After I grabbed him, he sort of, he sort of, I had him like this (demonstrating) and he sort of went like that (demonstrating), you know, busted my arms loose where it left his free, and he sort of shoved me back. I noticed the door myself, I looked toward this same direction that he was looking, right at the door. And inside of the room, inside of the bedroom it was dark—

Q. What did you see when you looked at the door?

A. I saw the door ease open, approximately seven to eight inches, and from about two feet high, I saw an end of a barrel, appeared to me to be a shotgun raising up between the door toward my friend, Johnny. And he fired a couple of shots. People started, you know, running around the house, running out of the house; he fired about two or three times, took a step toward the door, fired about two or three more we just—we just run out of the house. (Tr. pp. 188–89).

\* \* \* \* \* \*

Q. When the gun fell what happened?

A. Johnny picked it up.

Q. How did he do it?

A. He picked it up and—

Q. What did you do?

A. I grabbed him.

Q. How did you grab him?

A. Like this.

Q. You grabbed like this (demonstrating)?

A. No, like this. And he had the gun and went, move man, like that (demonstrating) and the door—the very

minute he said move, I looked at the door, and I saw it opening and I saw a barrel coming up between the door pointed at Johnny. He was standing straight in front of the door more or less catty cornered, and he picked it up like this, and he said move, move man, like that, and then pow, pow, pow, you know, took a step toward the door and fired the last couple of shots and then run out of the front door over to my house, over to my apartment. (Tr. pp. 194–95).

Petitioner did not testify at his criminal trial.

## II.

The sole issue to be decided is whether Petitioner was entitled to an instruction on self-defense.

The Supreme Court of North Carolina has reversed convictions where self-defense instructions were denied and the defendant had made some showing that his actions were in self-defense. However, in each of these cases, there was some affirmative showing that the defendant was free from fault in the creation of the difficulty, he did not have an opportunity to withdraw, and he was responding to a felonious or otherwise deadly or serious threat to his life or body. *North Carolina v. Ferrell,* 300 N.C. 157, 162–63, 265 S.E.2d 210 (1980); ("evidence that the deceased had a box cutter in his hand and struck the first blow ...."); *North Carolina v. Marsh,* 293 N.C. 353, 354–55, 237 S.E.2d 745 (1977); ("there was competent evidence which would permit, but not require, the jury to find that defendant did not voluntarily and aggressively enter into an armed confrontation with Bivens, but used only such force as was necessary or appeared to be necessary in order to save himself from death or great bodily harm."); *North Carolina v. Deck,* 285 N.C. 209, 215, 203 S.E.2d 830 (1974); ("defendant was without fault in bringing on the difficulty, deceased was armed with and first assaulted defendant with a deadly weapon, the fatal blow was struck during a struggle for the weapon first used by deceased *and* the defendant used such force as was necessary or as appeared to be necessary to save himself from death or great bodily harm.") (emphasis added); *North Carolina v. Dooley,* 285 N.C. 158, 163–66, 203 S.E.2d 815 (1974). (After a conciliatory conversation about a prior fight, the deceased walked away from the defendant [a one-legged man on crutches] and then "suddenly turned around and started running toward the defendant with a three-inch blade pocketknife in his hand crying, 'You goddam son-of-a-bitch, I'm going to kill you, or you're going to kill me.' Defendant, who was on the other side of the fence from Thomas, told Thomas to stop and moved backwards. In doing so he dropped one of his crutches and fell part-way down." Defendant then pulled out a gun, shot once in the ground, once in the air, and a third shot hit and killed the deceased.).

On the other hand, the Supreme Court of North Carolina has found that where the evidence shows that the defendant was the initial aggressor, that he failed to withdraw from a controversy when he had an opportunity to do so, *or* that he used unreasonable force to defend himself, then there is no error in the trial court's declining to give a requested instruction on self-defense. *North Carolina v. Montague,* 298 N.C. 752, 755–56, 259 S.E.2d 899 (1979); ("It appears from the evidence that defendant left a place of safety and aggressively and willingly entered into a fight without lawful excuse or adequate provocation. The trial judge, therefore, correctly refused to instruct on self-defense."); *North Carolina v. Davis,* 289 N.C. 500, 508–09, 223 S.E.2d 296 (1976); ("The record is void of evidence tending to show that: (1) Defendant was free from fault in bringing on the difficulty, (2) it was necessary or appeared to defendant to be necessary for him to kill or use the force used in order to save himself from death or great bodily harm."); *North Carolina v. Watkins,* 283 N.C. 504, 508–11, 196 S.E.2d 750 (1973); ("At most, defendant's testimony makes out a non-felonious assault upon defendant by deceased. Assuming the truth of such evidence, it afforded defendant no legal basis for the in-

tentional use of deadly force under the guise of self-defense."). For other cases denying the self-defense instruction, see *North Carolina v. Johnson,* 278 N.C. 252, 179 S.E.2d 429 (1971); *North Carolina v. Freeman,* 275 N.C. 662, 170 S.E.2d 461 (1969); *North Carolina v. McLawhorn,* 270 N.C. 622, 155 S.E.2d 198 (1967).

■ In the present case, the North Carolina Court of Appeals found as fact from the record that (1) Petitioner was at fault in the creation of the confrontation between himself and the deceased, and (2) the defendant failed to withdraw from the difficulty when he had sufficient time and opportunity to do so. These findings are entitled to a presumption of correctness, unless they are not clearly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). This Court finds that these findings are supported by the record and herein adopts such findings as its own. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The North Carolina Court of Appeals then applied the rule of law in North Carolina that

a defendant, prosecuted for homicide in a difficulty that he has provoked by the use of language "calculated and intended" to bring on the encounter, cannot maintain the position of perfect self-defense unless, at a time prior to the killing, he withdrew from the encounter within the meaning of the law. (citations omitted.)

The North Carolina Court of Appeals, noting specifically Tyrone Davis' account of the events, concluded as follows:

The defendant's evidence showed that his friend, Davis, tried forcefully and with words to get him to leave after the defendant picked up the gun and that the defendant reacted violently by "busting" Davis' hands loose, shoving him away and saying "Move, man." The defendant continued to stand within touching distance of the door with a gun in his hand, intently watching the door, and forcefully repulsing Davis. These facts do not show that defendant attempted, in good faith, to withdraw from the difficulty which defendant caused or created by his own wrong. Thus, the trial judge was not

required to instruct on the law of self-defense.

The holding of the North Carolina Court of Appeals in this case is completely in line with established North Carolina law. The only remaining question then is whether this law which denies a defendant an instruction on self-defense where the evidence shows that the defendant was at fault in creating the controversy, refused to withdraw when there was opportunity to do so, *or* reacted unreasonably with deadly force, denies such defendants of due process of law under the federal constitution. This Court holds that it does not.

In *Hankerson v. North Carolina,* 432 U.S. 233, 236, 97 S.Ct. 2339, 2341, 53 L.Ed.2d 306 (1977) the Supreme Court of the United States held that *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) requires "that the State persuade the jury beyond a reasonable doubt as to all elements of the crime, including that of unlawfulness—here the absence of self-defense." However, the Supreme Court also noted in *Hankerson* that "*Mullaney v. Wilbur,* 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508], (1975), does not forbid States from requiring the criminal defendant to present at least *some evidence to raise a factual issue* with respect to heat of passion or self-defense." 432 U.S. at 237, n. 3, 97 S.Ct. at 2342 n. 3. (emphasis added).

The crucial question then is what constitutes "some evidence to raise a factual issue" of self-defense to entitle a defendant to an instruction on self-defense. Petitioner would contend that the testimony of Tyrone Davis that the deceased pointed what looked like a shotgun barrel from behind the partially opened bedroom door constitutes "some" evidence to meet this standard. However, all the North Carolina Supreme Court cases cited above appear to require a showing of evidence on each of at least three things—the defendant's absence of fault in instigating the difficulty, the defendant's lack of opportunity to withdraw, and sufficient threat of death or great bodily harm by the deceased to make some prima facie showing that the defendant's own use of deadly force was reasonable. Where there is an absence of evidence

on any *one* of these elements, the Supreme Court of North Carolina has upheld the denial of a self-defense instruction.

This issue has arisen in this district before and the Court at that time held that because "there was *no* evidence that defendant was free from fault in bringing on the encounter, that petitioner reasonably or otherwise feared death or great bodily harm, that petitioner was the victim of a felonious assault, *or** that petitioner could not have retreated at any time during the encounter . . . [p]etitioner was not entitled to an instruction on the issue of self-defense." *Mills v. Shepherd,* 445 F.Supp. 1231, 1236–37 (W.D.N.C.1978), *aff'd,* 605 F.2d 1203 (4th Cir.1979). The district court's use of the disjunctive "or" thus left unresolved the question whether proof on any *one* of the mentioned issues would entitle the defendant to a self-defense instruction.

█ In the present case, this Court concludes that North Carolina's rule of law which requires a defendant to put forward "some" evidence on *each* of the essential elements of self-defense before he is entitled to have a self-defense instruction given to the jury, does not violate his due process rights under the federal constitution and is in conformity with the United States Supreme Court's statement that the states may require a defendant to put forth "at least some evidence to raise a factual issue." Without putting forward some evidence on *each* of the essential elements of self-defense, clearly a defendant cannot be said to have "raised a factual issue" with regard to self-defense. In this case, as found by the state courts, the defendant failed to make any showing that (1) he was without fault in creating the controversy that led to the killing, and (2) that he did not have sufficient time or opportunity to withdraw from the controversy. On the contrary, the defendant's own evidence showed the opposite—he was at fault in instigating the argument and he failed to withdraw when he had time and opportunity to do so. The defendant's evidence falls short of being sufficient to "raise a factual

issue" with regard to self-defense. Consequently, he was not entitled to an instruction on self-defense under either North Carolina law, or federal constitutional law.

However, inasmuch as this case apparently presents an issue of first impression in this circuit, the Court will allow a certificate of probable cause for purposes of appeal.

Therefore, having reviewed the record and considered each of petitioner's claims this Court finds the petitioner is not entitled to the relief sought, and HEREBY ORDERS that the writ of habeas corpus be denied and that the Attorney General's Motion to Dismiss the petition be granted.

Petitioner is advised that he may appeal *in forma pauperis* from this *final* Order by forwarding a written notice of appeal to the Clerk of the United States District Court, 401 West Trade Street, Charlotte, North Carolina 28202. Said *written* notice of appeal must be received by the Clerk within thirty (30) days from the date of filing of this final Order, and may be filed without the prepayment of costs or the giving of security therefor. For purposes of appeal, the Court will allow a certificate of probable cause in this case.

---

* Emphasis here supplied by the undersigned judge.